**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dewey E. SOUTHERS, Defendant-Appellant.**

**No. 77–5688.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1978.

---

Robert G. Fierer, Bruce H. Morris, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., James E. Fagan, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and HIGGINBOTHAM *, District Judge.

JAMES C. HILL, Circuit Judge.

Appellant Southers was convicted under a twelve-count indictment of six violations of 18 U.S.C. § 656,[1] pertaining to willful misapplication of bank funds, and six violations of 18 U.S.C. § 1005,[2] pertaining to issuance of bills of exchange with intent to defraud. On appeal, he raises points concerning the sufficiency of evidence, the trial court's choice of jury instructions, the trial court's limitation of cross-examination of witnesses, and the trial court's comments during the course of the trial. The appellant's contentions are without merit and we affirm.

Southers was the Executive Vice President of the Citizens Bank of Douglasville, Georgia, in March of 1976, the month during which the offenses for which he was convicted occurred. The evidence showed that Southers issued and signed, as authorized officer, six of the bank's cashier's checks for some $15,900. Two of the checks were payable in his own favor; three were payable to his creditors; and one was payable to a third party whose credit at the bank had been previously exhausted. Contrary to banking custom, neither payment nor security was given for the checks at the time they were issued. Furthermore, there

---

\* District Judge of the Northern District of Texas, sitting by designation.

1. § 656. Theft, embezzlement, or misapplication by bank officer or employee

Whoever, being an officer, director, agent or employee, of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

2. § 1005. Bank entries, reports and transactions

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; and "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

was no bank record of the transactions because Southers had retained the credit copies of the checks on his desk rather than process them through normal channels of the bank. Only through painstaking investigations did other bank officials discover his operations, for Southers also failed to go to another officer to have his use of the money approved, as required whenever a bank officer sought a loan from the bank. Southers' actions in so issuing the six cashier's checks were in contravention of established bank policies of which he was aware. The effect of Southers' manipulations was to leave the bank in the position of having paid out almost $16,000 without having received anything in return. This temporary, but admittedly unauthorized, use of the bank's money formed the basis of the charges against Southers, for he repaid the bank several months later subsequent to the discovery of the transactions.

### I. *Sufficiency of the Evidence.*

The appellant's first argument is that the district court erred in denying his motion for a judgment of acquittal. The thrust of this argument is found in the appellant's allegation that the evidence was insufficient to establish the element of intent to injure and defraud the bank[3] beyond a reasonable doubt. The appellant argues that the government failed to meet its burden of proof regarding intent because the evidence showed: (1) that Southers had expressed an intent to repay the bank and did, in fact, make repayment, (2) that no witness testified or suggested that Southers intended to injure and defraud the bank, and (3) that concrete evidence of such intent was lacking.

Taking the view of the evidence most favorable to the government,[4] it is clear that the element of intent to injure and defraud the bank was established beyond a reasonable doubt. This Circuit has adopted the rule that the requisite intent is proven by showing a knowing, voluntary act by the defendant, the natural tendency of which may have been to injure the bank even though such may not have been his motive. *United States v. Tidwell*, 559 F.2d 262, 266 (5th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978); *United States v. Killian*, 541 F.2d 1156, 1159–60 (5th Cir. 1976). The conduct of Southers as related above clearly entitled the jury to infer that he acted with the intent to injure or defraud the bank. *See United States v. Reynolds*, 573 F.2d 242, 244–45 (5th Cir. 1978); *United States v. Tidwell*, 559 F.2d at 266.

Contrary to the appellant's contentions, evidence of the eventual repayment of the misapplied funds does not negate the requisite intent. *United States v. Tidwell*, 559 F.2d at 266. The *Tidwell* court cited with approval the following language from *United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973):

> The ultimate or future possibility or probability of benefit to the bank is not a defense to a misapplication of funds at the time of purchase of the loans. The offense occurred and was complete when the misapplication took place. What might have later happened as to repay-

---

3. *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), defines the elements of a § 656 violation to be:

> (1) that the accused was an officer, director, etc. of a bank, (2) that the bank was connected in some capacity with a national or federally insured bank, (3) that the accused willfully misapplied the money, funds, etc. of said bank, and (4) that the accused acted with intent to injure and defraud said bank.

The defense built its case completely around the alleged lack of the requisite intent.

4. *United States v. Warner*, 441 F.2d 821, 831 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971) (citations omitted), directs that

> in a criminal case in which the jury has rendered a verdict of guilty, the appellate court must sustain that verdict if there is substantial evidence, taking the view most favorable to the Government, to support it. This means that we must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence must be resolved in favor of the jury verdict.

ment is not material and could not be a defense.

The repayment ruling sought by the appellant would put victim banks at the mercy of those bank officers who would use their official status to substitute, in the place of cold, hard cash taken without authorization from the bank, the undertaking, expressed or implied, of a financially distressed person to repay the bank. The making of such "loans" would leave banks in a harmed position; hence, the rule as it stands in this Circuit is reaffirmed.

■ The appellant's assertion that the evidence was insufficient to establish intent because no witness testified or suggested that Southers intended to injure and defraud the bank is also without merit. The appellant sought to elicit testimony from government witnesses on cross-examination regarding their opinions of the appellant's intent. As the foregoing discussion of case law indicates, "intent to injure and de-

fraud" is a phrase of particular legal construction where a defendant is charged with violations of 18 U.S.C. §§ 656 and 1005; therefore, the bank officials were properly not permitted to give their opinions on the question of intent to injure and defraud. *See United States v. Phillips*, 478 F.2d 743, 746 n.6 (5th Cir. 1973).

## II. Requests for Instructions Concerning Conduct Not Prohibited by § 656.

■ The appellant submitted numerous requests for jury instructions to the trial court, two of which were concerned with giving examples of conduct not prohibited by § 656.[5] The trial court chose not to use the requested charges which specified that "maladministration" and "bad judgment" were not crimes under § 656; instead, a comprehensive instruction on intent was given in language of the court's own choosing.[6] The trial court is under no obli-

---

**5.** Appellant's Request to Charge No. 13:

I charge you, Ladies and Gentlemen of the jury, that Section 656 makes criminal a wilful and intentional misapplication of bank funds. This means a criminal misapplication rather than a mere act of maladministration on the part of the defendant. Not every act of unauthorized or unlawful appropriation is punishable as unlawful, but only those acts wilfully done with the specific intent to defraud or deceive the bank. Record, Vol. 1, at 40.
Appellant's Request to Charge No. 15:

I charge you, Ladies and Gentlemen, that "misapplication" of bank funds covered in Section 656 does not cover bad judgment in arranging or participating in transactions merely because they are prohibited. This section requires something more than irregular or improper use of bank funds. There must be an intent to injure and defraud the bank shown. Record, Vol. 1, at 42.

**6.** The judge instructed the jury on intent as follows:

Now ladies and gentlemen, an intent to injure or defraud the bank is an essential element of the offense under this indictment. But there is no need to show the motive for such intent nor is it necessary to show that the bank actually suffered a loss.

The element of intent may be shown by an act willfully done, the tendency of which may have been to injure the bank.

Now, ladies and gentlemen, intent, of course, must always be proved by circumstantial evidence. You can't open up a man's head and look into his head or his heart like

you can into the carburetor of an automobile to see what's there. Intent is a subjective question. And, therefore, it should only be demonstrated by what one says or does, or the surrounding circumstances, surrounding what he did or said. So, intent can reasonably be proved in no other way except by acts and circumstances surrounding the case.

Now with respect to a charge, any charge under the statute which I read to you, I charge you that neither repayment of the funds in question nor a claim that the transaction might ultimately benefit the bank is a defense.

If a misappropriation or misapplication is established, then repayment or claim that the transaction ultimately may benefit the bank is no defense.

A misappropriation or misapplication takes point—takes place at a particular point in time, and subsequent correction of the situation does not end or terminate its criminality.

I charge you further that to act with intent to defraud means to actively and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to oneself.

However, the evidence in the case need not establish that the United States or any bank or any other person was actually defrauded, but only that the accused acted with the intent to defraud.

And you'll notice that it must have been done willfully in this respect, and in this

gation to use the language suggested by counsel provided that its charge, taken as a whole, correctly states the law. *United States v. Stokes*, 506 F.2d 771, 773 (5th Cir. 1975). The instructions given by the court regarding intent reflect a correct statement of the law. The jury could not have found, on the basis of those instructions, the appellant guilty merely because he committed acts that unintentionally deprived the bank of funds. *See United States v. Scheper*, 520 F.2d 1355, 1358 (4th Cir. 1975). In some other situation it might be advisable for the trial court to instruct on what acts the charged crime does not include, but this is not such a case.

### III. *Refusal to Charge that Restitution Was Relevant to the Issue of Intent.*

██ The trial court was also correct in refusing the appellant's request to charge the jury that restitution is a matter for the jury to consider in determining whether the requisite intent existed.[7] We reiterate that the rule in this circuit is that repayment is neither a defense nor material to the crime. *United States v. Tidwell*, 559 F.2d at 266. The appellant argues that the following language in *Tidwell* requires that the jury be instructed that repayment does have bearing on intent:

> respect I charge you that an act is done willfully if done voluntarily and intentionally and with specific intent to do something the law forbids, that is to say, with bad purpose, either to disobey or disregard the law.
>
> Now also, the indictment charges these acts were knowingly done. And I charge you, ladies and gentlemen, that an act is knowingly done if it is done voluntarily and intentionally and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" is to insure that no one be convicted for an act done because of mistake or accident or other innocent reason.
>
> As stated before with respect to an offense such as charged in this case, specific intent must be proved beyond a reasonable doubt before there can be a conviction.
>
> Now with respect to this question of intent, I charge you that intent and motive should never be confused. Motive is what prompts or causes a person to act or fail to act.

Evidence of the later foreclosure on the mortgage might have lent credibility to Tidwell's version of his state of mind at the time of misappropriation by tending to prove that Tidwell could not have known that his acts would have a natural tendency to harm the bank. To this extent the evidence was logically relevant. 559 F.2d at 266. The appellant fails to note, however, that the court in *Tidwell* substantially qualified the above statement as follows:

> But it might also have induced the jury to decide the case on whether the bank suffered a pecuniary loss as a result of Tidwell's acts rather than on grounds material to the offense alleged. Under the Federal Rules of Evidence, the trial judge has broad discretion to exclude evidence where its probative value is substantially outweighed by such dangers as confusion of issues, misleading the jury, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

559 F.2d at 266–67 (footnote omitted). Although the trial court admitted limited testimony regarding the appellant's intent to repay and repayment, he excluded elaboration on the subjects in an apparent effort to prevent the jury's becoming confused or misled. The court's refusal to charge the jury as the appellant requested regarding

> Intent refers only to the state of mind at the time and with which the act is done. Personal advancement and financial gain are two well recognized motives for much of human conduct. These laudable motives may prompt one person to do voluntary acts of good; another to do voluntary acts of crime. Good motive alone is never a defense where the act done or omitted is a crime. So the motive of the accused is immaterial except insofar as evidence of motive may aid in the determination of the *state of mind or intent* of the accused.
> Tr. 276–79.

7. Appellant's Request to Charge No. 14:
> I charge you, Ladies and Gentlemen, that the fact that the defendant Dewey E. Southers has made full restitution to the bank would not of itself vitiate the crime, the fact of restitution does constitute a matter for your consideration in determining the defendant's intent or lack of intent to injure and defraud the bank. Record, Vol. 1, at 41.

repayment was an appropriate exercise of a similar privilege and concern, for such an instruction might well have misled the jury by focusing their attention on the immaterial ground of repayment. *See United States v. Zepeda-Santana*, 569 F.2d 1386, 1390 (5th Cir. 1978). As previously noted in Part II of this opinion, the charge given by the court on intent was a correct statement of the law.[8]

### IV. *The "Natural Tendency" Charge on Intent.*

█ The appellant's argument that the trial court erred in charging the jury that "intent may be shown by an act willfully done, the tendency of which may have been to injure the bank" is groundless. In *United States v. Killian*, 541 F.2d 1156, 1160 (5th Cir. 1974), this court forthrightly approved language identical in substance as a standard for proving intent. *United States v.*

*Tidwell* reasserts that approval. 559 F.2d at 266. The appellant argues that since the evidence showed that there was no actual injury to the bank and that he intended to repay the bank, the "tendency" charge was particularly prejudicial. Actual injury to the bank and intent to repay are not material to the issue of intent. *United States v. Tidwell*, 559 F.2d at 266. The charge, as given, was proper.

### V. *The Charge Regarding Appellant's Failure to Testify.*

█ The appellant claims he was prejudiced by the court's use of the word "failure" in the charge to the jury regarding the appellant's not having testified in his own behalf.[9] The court's charge, reviewed as a whole, *see United States v. Garcia*, 531 F.2d 1303, 1307 (5th Cir.), *cert. denied*, 429 U.S.

---

8. The situation regarding the relevancy of repayment in the case at hand is to be distinguished from that found in the recent case of *United States v. Foshee*, 5 Cir., 569 F.2d 401, *modified*, 578 F.2d 629 (5th Cir. 1978). The Court in *Foshee* indicated that the payment of checks in a check kiting case is a factor the jury can weigh to determine whether the defendant had a reasonable expectation that deposits would cover the checks at the time they would be presented for payment. The crucial question in a check kiting case is whether the defendant intended to write checks which he could not reasonably expect to cover and thereby defraud the bank or whether he was genuinely involved in the process of depositing funds and then making withdrawals against them. Hence, proof that the checks were eventually paid might well be pertinent to the defendant's initial intent. That situation is much different from the one in the present case where the defendant was charged with willful misapplication of bank funds and issuance of bills of exchange with intent to defraud. Southers did not argue that he did not intentionally obtain the bank's money in an unauthorized manner, thereby injuring the bank by substituting an alleged promise of questionable value for the bank's cash. His intent could not have been determined by whether the funds illegally obtained were returned or not returned. The holding of *Foshee* is limited to cases involving schemes of the nature of check kiting and cannot rationally be extended to the situation where the initial manipulation of the bank's funds was unauthorized. In a check kiting situation the injury to the bank may not be clear at the time the checks are written. In a case where an officer misapplies the bank's

funds, however, the injury to the bank occurs at the time the funds are manipulated without authorization because the bank, being then in a less secure position than before, has been harmed.

9. The judge instructed the jury as follows:

Now, ladies and gentlemen, one of the things you have to consider in every criminal case is the weight you are to give the testimony of a defendant where he takes the stand and becomes a witness in his own case, or, on the other hand, the effect of the failure of a defendant to testify or take the stand in his own case.

Now, in this regard, I instruct you that in a criminal case, a defendant has a perfect right to either testify as a witness in the case or to decline to do so.

I charge you further that a defendant's failure to testify as a witness, where he chooses not to take the witness stand, does not raise any presumption whatsoever against him.

The law gives to every defendant the right not to go on the witness stand, and the fact that he does not do so does not raise, as I say, any presumption against him whatsoever.

In other words, ladies and gentlemen, you are to decide the case from the evidence which you have heard from the witness stand and to not in any fashion hold it against the defendant merely because he failed to take the stand in his own defense.

Tr. 270.

941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976), does not reflect any prejudice to the appellant. The use of the word "failure" in such instructions appears in Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 17.14 (3rd ed., 1977), and was noted without adverse comment by this court in *Locklear v. United States*, 393 F.2d 729, 730 n.2 (5th Cir. 1968).

### VI. *Limitation of Cross-Examination of Witnesses.*

■ The trial court's exclusion of character evidence proffered by the appellant on cross-examination of prosecution witnesses was proper on the basis of two interrelated considerations. First, character evidence on a defendant's behalf may be offered as of right under Rule 404(a)(1) of the Federal Rules of Evidence. The defendant has the right to offer such testimony, along with other proper evidence, during presentation of his case. *See United States v. Michelson*, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948). The situation in this case is unusual because the appellant sought to elicit testimony regarding his good character on cross-examination during the government's case-in-chief. Introduction of character evidence by a defendant permits the government to cross-examine those witnesses for purposes of rebuttal with regard to those aspects of the defendant's character. Fed.R.Evid. 404(a)(1). The prosecutor in this case expressed his intention to exercise that right. At this point the second consideration comes into play. The trial judge has broad discretion to limit the scope of cross-examination under Rule 611(b) of the Federal Rules of Evidence. Given the unusual request by the appellant to introduce his character evidence on cross-examination of the government's witnesses and the potential confusion in the government's subsequently cross-examining its own witnesses, the trial court was well within the reasonable bounds of discretion in advising the defendant that he would be required to offer his character evidence during the presentation of his own case. *See United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976). The appellant was not prejudiced by the trial court's decision to receive evidence in an orderly manner. The appellant's choice to offer no evidence after the prosecution rested was made freely; the resulting absence of the character evidence he had sought to introduce during the prosecution's case cannot be blamed on the trial court's efforts to maintain an orderly and coherent presentation of the evidence.

### VII. *Refusal of the Motion for Mistrial.*

The appellant's final argument with regard to the trial court's error in refusing to grant his motion for mistrial is also without merit. The appellant admits that his contentions concerning evidence offered as admissible in relation to intent must have been valid in order for the trial judge's comments to have been truly prejudicial. Since the district court's views on the element of intent have been upheld, his comments to defense counsel in explanation and support of his rulings can hardly be considered as biased. The record reveals no misconduct on the trial judge's part; it merely reflects an effort to prevent the defense counsel's statements regarding the bearing of repayment on intent from misleading or confusing the jury.

AFFIRMED.