**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alan Neal SCOTT, Defendant-Appellant.**

**No. 82–7072.**

United States Court of Appeals, Eleventh Circuit.

April 4, 1983.

Rehearing and Rehearing En Banc Denied May 24, 1983.

▮▮▮▮▮▮▮▮▮▮▮▮

N.P. Callahan, Jr., Birmingham, Ala. (court-appointed), for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Holly L. Wiseman, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and LYNNE *, District Judge.

JAMES C. HILL, Circuit Judge:

In December, 1976, Alan Neal Scott, appellant in this case, persuaded an acquaintance to co-sign on a small loan application obtained at a Birmingham, Alabama bank. The loan was quickly repaid, thus establishing a good credit rating. However, material information on the loan application was falsified by the appellant.[1] Appellant, a few months later applied for credit at numerous banks and department stores. On each application appellant again falsified information regarding his employment, income and prior address. Based on his prior credit rating from his loan in December and the false information elevating his financial image, many of the institutions extended him credit. The falsified information was detected and the institutions were notified, thereby preventing them from being defrauded.

Appellant was subsequently charged in a five count indictment with making false statements to two banks pursuant to 18 U.S.C.A. § 1014 and with use of the mails

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Appellant gave a ficticious previous address and stated he had been employed as an ac-countant at West Virginia University (Count I). For the applications charged in Counts II–V, appellant stated he was employed by "RAS Associates," a non-existent company, at a salary of $1,200.00 per month.

in furtherance of a scheme to obtain, by means of false representations, money or property in violation of 18 U.S.C.A. § 1341. After a jury trial was held, Scott was found guilty on all five counts. He now appeals his conviction.

## I.

■ Appellant argues that the trial court failed to instruct the jury properly on the requisite elements of § 1341. This statute makes it a federal crime to "devise any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ...." 18 U.S.C.A. § 1341 (emphasis added). The phrasing of this statute in the disjunctive prohibits two separate acts, each constituting an independent ground for prosecution and conviction of mail fraud. *See United States v. Halbert,* 640 F.2d 1000, 1007 (9th Cir.1981).

■ The trial judge properly explained and distinguished these two grounds for conviction. In so doing, he did not, as appellant suggests, ignore the requirement of specific intent. The court's instruction was as follows:

> Now, in pertinent parts, this statute under which Counts 3, 4 and 5 are framed, Section 1341 of Title 18 of the U.S.Code, reads like this: "Whoever, having devised or intending to devise any scheme for obtaining money or property by means of false pretenses, representations or promises for the purpose of executing such scheme or attempting so to do, places at any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, shall be guilty of the offense against the laws of the United States." This statute was enacted under the power of Congress to establish and operate and regulate the Post Office establishment of the United States. So the use of the mails is an essential element of the crime. If there

had been a scheme to defraud, I skipped that part of the statute, that is against the law, but that is not what the Government charges here. The Government charges under that part of the statute which makes it a crime to devise or intend to devise a scheme to obtain property by means of false pretenses, representations or promises, and in carrying out that scheme to use the mails. The statute actually uses the word scheme and artifice, but the indictment only uses the word scheme. The words mean, they include any plan, course of action intended to deceive others and to obtain by either false or fraudulent pretenses, representations or promises, either money or property from persons who are so deceived. Statement or representation is false or fraudulent within the meaning of this statute if known to be untrue or made with reckless indifference as to the truth or falsity and made or caused to be made *with the intent to deceive.* There are three essential elements. First, the act or acts having devised a scheme to obtain from certain extendors of credit property or money by means of false representations; second, the act or acts of placing or causing to be placed in an authorized depository for mail matters, generally means mailbox, a letter—in other words, a place anywhere you know mail is going to be picked up, an authorized place to mail letters, a letter intended to be sent or delivered by the Post Office Department as charged in the indictment; and third, the act or acts of using or causing the use of the United States Mail willfully and with a *specific intent to carry* out some essential step in the execution of said scheme ....

> The crime charged in Counts 3, 4, and 5 is a serious crime which requires proof of specific intent before the defendant can be convicted under either one of those counts. Specific intent as the term implies means more than the general intent to commit the act. The Government must prove beyond a reasonable doubt

that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding the case. An act or failure to act is knowingly done if done voluntarily, intentionally and not because of mistake, accident or other innocent reason, and that intent may be inferred from conduct and circumstantial evidence from which reasonable inferences can be drawn. But since intent is an essential element of this charged offense under Counts 3, 4 and 5, specific criminal intent is required. (Emphasis added)

There is little doubt that the trial judge clearly explained to the jury the exact offense for which the appellant was charged, including the element of specific intent. Appellant's objection to the trial court's instructions seem to center on the court's negation of the need to prove an intent to defraud. As we stated above, this case was not brought under the part of the statute involving a scheme to defraud. Although, the Government's approach in dividing this statute may be novel, the statute clearly provides for the prosecution of the intentional obtaining of property through false representations. The "intent to defraud" element under the latter part of this statute is the intent to obtain the property through false representations.

However, representations known by a person to be false is a type of a scheme to defraud. *United States v. Bruce,* 488 F.2d 1224 (5th Cir.1973), *Silverman v. United States,* 213 F.2d 405 (5th Cir.1954). The trial court may not have explained this as clearly as possible. The trial court did err by stating this case did not involve an intent to defraud. However, in this instance, the error is harmless at best because of the court's lengthy and accurate instructions explaining that the jury must find a scheme to obtain property based on knowingly false representations in order to find the appellant guilty. The trial court's instruction indicating this was not an intent to defraud

case, was made only to clarify which part of the statute this particular appellant was being tried under. The trial court did not eliminate the "intent to defraud" element of this statute, he merely defined the term as it pertained to the appellant's case. This error simply involved a semantics problem. To reverse the conviction on the basis of this error would be to place form over substance.

## II.

■ In Counts I and II, appellant was charged with violating 18 U.S.C.A. § 1014 which states in pertinent part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the ... Federal intermediate credit bank, or any division, officer, or employee thereof, ... a Federal Savings and Loan Association, a Federal Reserve Bank ... any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

At trial, the defendant/appellant introduced evidence attempting to demonstrate that the false information he supplied on his loan applications did not, in actuality, influence the banks to grant his loan requests. The loan officers at the two banks testified that they were not influenced by the appellant's false statements regarding his employment and salary when they granted the loans. Appellant contends that this failure to influence the banks' decisions establishes his lack of intent to influence. Moreover, appellant suggests that the false statements were not material because of their lack of influence.

Appellant misunderstands the definition of "intent to influence" under this statute.

The question of intent is not whether the banks actually relied or were influenced by the false statements, but rather, if the statement was capable of influencing. *United States v. Kelley,* 615 F.2d 378, 379–80 (5th Cir.1980); *see United States v. Johnson,* 585 F.2d 119, 124–25 (5th Cir. 1978). The false information appellant gave the bank was clearly capable of influencing them. In this instance the bank chose not to rely on this information because there was a reliable co-signer (Count I) and separate collateral (Count II). However, employment history is precisely the kind of information which may be expected to influence a bank in determining whether to extend credit.

Appellant, also suggests that because the banks were not actually influenced by his false representations, the statements must not have been material. This is syllogistic reasoning at best. Because the loan officers were not personally influenced by appellant's false statements does not negate the materiality of the statements themselves. The statements had the "capacity to influence." The Supreme Court commented on this type of argument in an early case construing the statute stating: "It does not lie with one knowingly making false statements with intent to mislead . . . to say that the statements were not influential or the information not important. *Kay v. United States,* 303 U.S. 1, 6, 58 S.Ct. 468, 471, 82 L.Ed. 607 (1938). The statements were material and the Government sufficiently established this element.

### III.

█ During the course of the trial the Government sought and was allowed to introduce extrinsic evidence of acts similar to the crimes charged in the indictment. Specifically, the Government introduced two applications for credit made out by the appellant approximately one year prior to this trial. On both applications appellant used his father's name and he obtained credit for an unspecified amount of money. This evidence was offered to show intent, a common scheme and plan.

Under Fed.R.Evid. 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.

However, before extrinsic evidence of similar acts may be admitted, it must first be determined that the acts are relevant to an issue *other* than the defendant's character. Further, the court must conclude that the probative value of the evidence is not substantially outweighed by undue prejudice. *United States v. Dothard,* 666 F.2d 498 (11th Cir.1982); *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978). Appellant challenges the court's admission of this evidence as not meeting the requirements set forth in *Dothard.*

█ The main thrust of appellant's defense in this case was a lack of intent. Appellant was permitted to introduce a limited amount of testimony demonstrating that the accounts he had opened using the false representations were current. This evidence was offered to demonstrate his lack of intent. Accordingly, the Government introduced the prior applications to rebut the inference of a lack of intent. This evidence was highly relevant to the question of appellant's intent which is an acceptable reason for admission under Fed. R.Evid. 404(b). Further, the issue of intent is separate and distinct from the issue of character.

█ It is also suggested by the appellant that these two applications were too remote in time to be relevant. When the admission of extrinsic act evidence is challenged on the grounds of remoteness the relevant inquiry is whether the other acts have "clearly probative value with respect to the intent of the accused *at the time of*

the offense charged." *United States v. San Martin,* 505 F.2d 918 (5th Cir.1974) (emphasis in original). The test for remoteness is not a mechanical application based solely on the amount of time that has elapsed between the prior extrinsic act and the present offense. *Id.* In the present case, only one year had elapsed between the acts. Moreover, as stated above, this evidence was highly relevant to the issue of intent. The balancing of the factors set forth in *Dothard* is not meant to be done in a mechanistic way. Further, this balancing is generally left to the sound discretion of the trial court. *United States v. Dunbar,* 614 F.2d 39 (5th Cir.1980). We find no abuse of discretion in the trial court's admission of this evidence.

## IV.

■ The Government, in an attempt to demonstrate common scheme and intent, tried to introduce further evidence of other credit card applications which the appellant had falsely filled out, and for which he had not been charged. The trial court properly ruled these applications inadmissible because the Government had not disclosed them to defense counsel pursuant to Fed.R. Crim.Proc. 16. *See United States v. Pascual,* 606 F.2d 561 (5th Cir.1979). However, the Government elicited through certain witnesses' testimony the pertinent information contained in the inadmissible documents. In so doing, the witnesses were allowed by the trial court to use the applications to refresh their recollection.

Under Fed.R.Evid. 612, refreshing one's recollection is permitted. The trial court carefully instructed the witnesses that they were permitted to testify only as to what they independently remembered. They were instructed not to testify as to any statement contained in the applications for which they did not have an independent recollection.

Appellant objected to the admission of this testimony due to the Government's failure to comply with Fed.R.Crim.Proc. 16. It is true that the court has an obligation to prevent witnesses from "putting into the record the contents of an otherwise inadmissible writing under the guise of refreshing recollection." *Thompson v. United States,* 342 F.2d 137, 140 (1965). However, the court carefully supervised the admission of this testimony. One of the witnesses, after the judge's instruction, was not able to testify as to the contents of the credit application because he could not independently remember the information appellant had given. When there is careful supervision by the court, the testimony elicited through refreshing recollection may be proper, even though the document used to refresh the witnesses' memory is inadmissible. *Id.* at 140. *See* 2 Wharton's Criminal Evidence § 416 (1972); *see also Empire Oil and Gas Corp. v. United States,* 136 F.2d 868 (9th Cir.1943). The documents were properly excluded; the evidence that came in was not the document, but rather, the recollection of the witnesses. We find no error in the admission of the testimony by these witnesses.

## V.

During the appellant's trial, the court permitted the Government to introduce extrinsic evidence of credit applications containing false information submitted by the appellant to institutions other than those charged in the indictment. This evidence was admitted on the issue of intent. The appellant sought to rebut this evidence through showing that for each open account, payments had been made and that the accounts were current. Appellant attempted to introduce this evidence to show a lack of intent. The court, however, excluded the evidence of payments, while allowing limited testimony that the accounts were current, or that the credit institution had no complaint with the appellant's account.

The Fifth Circuit has held in *United States v. Foshee,* 569 F.2d 401 (5th Cir. 1978), that evidence of payments and evi-

dence that the lending institutions were *not* defrauded is proper evidence which may be used to negate an inference of specific intent. In *Foshee,* the defendants were accused of setting up a "check kiting" scheme. The Foshees were indicted for making a series of deposits and withdrawals, *knowing,* there were insufficient funds in the drawee banks to cover the checks from the drawer banks. The Foshees had several accounts at several different banks. They operated a 2,000 acre farm, a farm supply company, a milling company and several other agricultural enterprises.

The Foshees contended they did not have the requisite intent to be found guilty. They claimed they did not know the checks and deposits they were making, were in some instances, not valid. In essence, the Foshees argued that they had a reasonable expectation that their deposits would cover the checks they wrote at the time the checks were presented to the banks to be cashed.

The evidence showing repayment by the Foshees and a lack of the banks' suffering any loss was held to be material. The court also ruled that counsel's argument to the jury could include reference to the Foshee's repayment as evidence of a lack of intent. Appellant in the instant case cites *Foshee* as precedent for allowing his evidence of repayment of the credit cards and loans. We disagree with appellant's analysis.

The intent that the Foshees negated was the intent *knowingly* to write checks on accounts where there were insufficient funds. It is not uncommon for large businesses to have several accounts at various banks. Nor, is it uncommon to deposit large amounts of money and write checks against the deposit. However, if the deposit check does not clear, then the checks written against the deposit will not likely be honored. Numerous transactions may take place prior to the bank's awareness that the deposit check did not clear. If these types of transactions are done *knowingly,* then the crime of mail fraud comes into play. If, however, these transactions are done innocently, then the crime of mail fraud is not complete, because there was no intent. In this type of case evidence of repayment can shed light on whether a defendant acted knowingly or innocently. This type of evidence does not negate the fact that the bank may have lost money; nor is this evidence relevant to whether the scheme to defraud is successful because success of the scheme is not a requirement under the mail fraud statute. *United States v. Foshee,* 569 F.2d 401, 403 (5th Cir.1978), *Adjmi v. United States,* 346 F.2d 654, 657 (5th Cir.1965).

In the instant case, appellant sought admission of the repayment evidence to demonstrate his lack of intent. However, the intent issue in this case is a different intent than that in *Foshee.* In the present case the intent was whether appellant *knowingly* falsified the information on the credit applications. Appellant openly admits he falsified this information. It was his intentional falsification on the documents which established the requisite intent of the statute. Whether the accounts were current, or whether he repaid the accounts is immaterial as to whether he intentionally falsified the documents. This is similar to the intent question in embezzlement cases. If a person in lawful possession of another's property converts it, but all the while had the intent to replace it with substitute property, he or she is still guilty of embezzlement.

Appellant contends that because he repaid the accounts he was not guilty of mail fraud, because he did not intend to defraud. He did, however, intend to falsify material documents. This is unlike the facts in *Foshee* where the critical question was whether the Foshees intentionally deposited and withdrew money *knowing* there were insufficient funds. If repayment of the missing funds can shed light on whether actions of a defendant are intentional, then evidence of the repayment is relevant. If, however, evidence of repayment cannot shed light on the defendant's intent to do

the forbidden act, such as in this case, then evidence of repayment is irrelevant and it will only mislead and confuse a jury.

In *Foshee* the evidence of repayment was also admitted to demonstrate the "good faith" of the defendants. This evidence helped to inform the jury as to the Foshees' intent knowingly to do the act for which they were charged. In the present case there was no question of good faith. Appellant admits he falsely filled out the forms knowingly and intentionally. Filling out the forms falsely is the charge against appellant. The intent to defraud element is not the same in *Foshee* and the present case. The acts committed were different. Under the mail fraud statute, many separate and distinct acts may constitute mail fraud. Each act will dictate the appropriate definitions of the intent to defraud element. This conclusion has previously been drawn in *United States v. Southers,* 583 F.2d 1302 (5th Cir.1978). In *Southers,* the defendant was convicted for willful misapplication of bank funds and the issuance of bills of exchange with the intent to defraud. The defendant argued that the trial court erred in refusing to charge to the jury that restitution was relevant to the issue of intent based on *Foshee*. The appellate court found no error and stated that:

> The situation regarding the relevancy of repayment in the case at hand is to be distinguished from that found in the recent case of *United States v. Foshee,* 5 Cir. 569 F.2d 401, *modified,* 578 F.2d 629 (5th Cir.1978). The Court in *Foshee* indicated that the payment of checks in a check kiting case is a factor the jury can weigh to determine whether the defendant had a reasonable expectation that deposits would cover the checks at the time they would be presented for payment. The crucial question in a check kiting case is whether the defendant intended to write checks which he could not reasonably expect to cover and thereby defraud the bank or whether he was genuinely involved in the process of deposit-

ing funds and then making withdrawals against them. Hence, proof that the checks were eventually paid might well be pertinent to the defendant's initial intent. That situation is much different from the one in the present case where the defendant was charged with willful misapplication of bank funds and issuance of bills of exchange with intent to defraud. Southers did not argue that he did not intentionally obtain the bank's money in an unauthorized manner, thereby injuring the bank by substituting an alleged promise of questionable value for the bank's cash. His intent could not have been determined by whether the funds illegally obtained were returned or not returned. The holding of *Foshee* is limited to cases involving schemes of the nature of check kiting and cannot rationally be extended to the situation where the initial manipulation of the bank's funds was unauthorized. In a check kiting situation the injury to the bank may not be clear at the time the checks are written. In a case where an officer misapplies the bank's funds, however, the injury to the bank occurs at the time the funds are manipulated without authorization because the bank, being then in a less secure position than before, has been harmed.

*Id.* at 1308 n. 8.

Because the intent issue in this case is clearly distinguishable from that in *Foshee,* we find no error in the court's exclusion of the repayment evidence.

Having found no error in the record we AFFIRM.