**UNITED STATES of America, Plaintiff,**

v.

**Archie Bob HENDERSON, Richard J. Heath, and John J. Rooney, Defendants.**

**Crim. No. 87–30017.**

United States District Court, S.D. Illinois.

Dec. 4, 1987.

Bruce E. Reppert, Ass't U.S. Atty., East St. Louis, Ill., for plaintiff.

Clyde L. Kuehn, Belleville, Ill., for Henderson.

R. Thomas Day, Ass't Federal Public Defender, St. Louis, Mo., for Heath.

## ORDER

STIEHL, District Judge:

Before the Court is a motion in limine filed by the United States and directed to defendants Archie Bob Henderson (Henderson) and Richard J. Heath (Heath). The government seeks to limit certain evidence as irrelevant to the offenses as charged.

The indictment charges the defendants with violations of 18 U.S.C. § 1014, the submission of false loan applications to a federally insured savings and loan; 18 U.S.C. § 1341, mail fraud; 18 U.S.C. § 1343, wire fraud; and 18 U.S.C. § 2314, inducing persons to travel in interstate commerce in the execution or concealment of a scheme.

The government seeks to restrict any direct or indirect references to the following:

a) That the coal projects were legitimate business enterprises which failed as a result of a decline in the coal market.

b) That there was any wrongdoing committed by the contract manager at Guaranty Federal (Guaranty), after the termination of Heath's management contract, and that those subsequent wrongdoings caused losses to Guaranty.

c) That Guaranty acquiesced in and ratified the loans in question after Rooney left employment at Guaranty.

To make a claim under 18 U.S.C. § 1014, the government must show that the defendants knowingly made false statements or reports for the purpose of influencing *in any way* the action of an FSLIC insured institution. However, "[a]ctual reliance by the savings and loan on a defendant's false statements is not necessary for a conviction under § 1014. It is enough that the statement has the capacity of influencing the savings and loan." *United States v. Glassey*, 715 F.2d 352, 353 (7th Cir.1983).

> The essence of a § 1014 offense is the making of the false statement with the *intent* to influence the lender, and it is not dependent upon the accomplishment of that purpose. (Citations omitted.) It is a crime of subjective intent requiring neither reliance by the bank officers nor an actual defrauding. (Citations omitted.) Therefore, whether the statement could or did influence the bank is not at issue. The issue is simply whether sufficient evidence was presented for the jury to conclude that the defendant made the false statement with intent to or for the purpose of influencing the bank to renew the loan.

*United States v. Shaid*, 730 F.2d 225, 232 (5th Cir.1984). *See also U.S. v. Scott*, 701 F.2d 1340, 1345 (11th Cir.1983) (where the court found that "intent to influence" merely requires that the false statement be

capable of influencing the lending institution.)

The Fifth Circuit has held that even if a bank officer knew that the statement was false, that a § 1014 violation occurs because the ultimate beneficiary of the protection is the United States as the insurer. This is true even when a party defendant was in collusion with a bank officer. *United States v. Bush*, 599 F.2d 72, 75 (5th Cir.1979).

The Court is persuaded that the elements of a § 1014 violation are such that the only relevant evidence would be that relating to the state of mind of defendants Henderson and Heath at the time the loan documents were submitted. Clearly, that state of mind would be relevant to the required showing that defendants *knowingly* made false statements or reports for the purpose of influencing the various lending institutions.

The defendants argue that because they are charged with mail fraud, wire fraud, and the inducement and transportation of officers, employees and agents of a federally insured savings and loan across state lines the government must prove a scheme to defraud. They argue that this requires a higher degree of proof than merely showing that a false statement was made to the savings and loan.

Therefore, the precise language of §§ 1341, 1343 and 2314, requires close review. 18 U.S.C. § 1341 provides, in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The Supreme Court has recently addressed the language of § 1341 in the decisions of *McNally v. United States*, 484 U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); and *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In *McNally* the Court made a detailed review of the legislative history of § 1341. Although the issue before the Supreme Court in *McNally* is not the issue before this Court, the Court's analysis of the mail fraud statute is applicable.

The Court noted that the 1909 amendment to the mail fraud statute "criminalized schemes or artifices 'to defraud' or 'for obtaining money or property by means of false or fraudulent pretenses, representation, [sic] or promises....'" *Id.*, 107 S.Ct. at 2880. The Court further concluded:

> As we see it, adding the second phrase ["for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... "] simply made it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property.
>
> We believe that Congress' intent in passing the mail fraud statute was to prevent the use of the mails in furtherance of such schemes.

*Id.* at 2881 (emphasis added). *See also Carpenter*, —— U.S. at ——, 108 S.Ct. at 320 (where the Court stated, "Sections 1341 and 1343 reach any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.")

Therefore, defendants' reliance on the language "to defraud" in § 1341 is misplaced. The Supreme Court has recognized that mail fraud may be established either through showing a scheme or artifice to defraud *or* a scheme or artifice to obtain money or property by means of false or fraudulent pretenses, representations or promises. 107 S.Ct. at 2881; —— U.S. at ——, 108 S.Ct. at 320.

Clearly, the government must establish a "scheme" or "artifice" to support a conviction under 18 U.S.C. §§ 1341, 1343 and 2314. It has been held that "representations known by a person to be false is a type of a scheme to defraud." *United States v. Scott*, 701 F.2d 1340, 1344 (11th Cir.1983). This is consistent with the language previously cited from *McNally*,

where the Court stated that it is "unmistakable that the statute reaches false promises ... as well as *other frauds* involving money or property." 107 S.Ct. at 2881 (emphasis added).

In light of the foregoing, the Court is not persuaded by defendants' argument that any higher showing of fraud need be made under §§ 1341, 1343 or 2314. This does not discount, however, the government's continued burden to establish a "scheme" and to establish that the actions were done "knowingly." (As well as the individual burdens of establishing the use of the mails, the use of the telephones and/or wire and the inducement of travel in interstate commerce all in furtherance of the scheme.)

The Court finds that, even if relevant, the probative value of the evidence which the government seeks to limit would be substantially outweighed by the danger of confusion of the issues, misleading to the jury and would result in undue delay and waste of time, and thus should be excluded under Fed.R.Evid. 403.

Accordingly, the following issues are immaterial to the charges of the indictment and evidence in support of the following is excluded as irrelevant:

1) Any evidence or testimony concerning the decline in the coal market subsequent to the submission of the loan documents.

2) Any evidence or testimony concerning any wrong doing committed by the contract manager installed by Guaranty Federal after termination of Heath's management contract which was the cause of significant losses to Guaranty Federal.

3) Any evidence or testimony concerning any acquiescence in or ratification of the loans after the departure of John Rooney from Guaranty Federal.

The Court further orders that the defendants and their respective counsel and all defense witnesses shall refrain absolutely from the direct or indirect mention or offering into evidence such items of evidence until such time as the Court may further direct. Defense counsel are directed to provide a copy of this Order to all prospective defense witnesses.

IT IS SO ORDERED.