HILL, Senior Circuit Judge:
 

 Bernice Morales was convicted of one count of violating 18 U.S.C. § 656, misapplication of bank funds by a bank employee, and now appeals, assigning as error the district court’s refusal to give her proposed “theory of defense” jury instruction. We hold that the district court did not commit reversible error, and affirm.
 

 I. Background
 

 On October 4, 1989, Appellant, Bernice Morales, wrote four checks totalling $3,511.00 on her account at Citicorp Savings Bank and presented them for cashing by tellers at Southeast Bank, where she was then employed. Appellant admitted that by writing four checks instead of one for the $3,511.00, she evaded internal bank reporting requirements and bypassed the need for a supervisor to approve cashing the checks. At the time, Ms. Morales had about $400.00 in her Citicorp account. Appellant knew that she did not have sufficient funds in the bank to cover the checks when she wrote them. On October 10, 1989, these checks were returned to Southeast Bank for insufficient funds. A fraud investigator for Southeast Bank questioned the appellant about the checks on October 12, 1989, and during this interview Appellant stated that she had been expecting a loan from United Mortgage to cover the checks on October 4 when she wrote the checks. Ms. Morales was fired by Southeast Bank on October 12, 1989.
 

 Ms. Morales testified at trial that she spoke with a mortgage broker at United Mortgage on October 4, 1989, prior to writing the four checks, about the possibility of obtaining a $3,000.00 loan. At that time, United Mortgage already held a second mortgage on Appellant’s home. After a cursory review of the status of the second mortgage loan, the mortgage broker indicated that he did not foresee any difficulty with the loan, but he also stated that he would have to check the equity on the property. Some time after Appellant had cashed the four checks, the mortgage broker informed her that the value of the property had decreased enough to eliminate all of her equity and, accordingly, no loan would be made.
 

 On August 28, 1990 a federal grand jury returned a one count indictment against Ms. Morales charging her with embezzling
 
 [1]
 
 , abstracting, purloining, or misapplying bank funds while a bank employee, in violation of 18 U.S.C. § 656.
 
 [2]
 
 Appellant pled not guilty, .and the case was tried on November 8, 1990. At the close of the evidence, the court conducted a charge conference at which defense counsel stated that the defense requested no jury instruction on a theory of defense because such instruction was not yet prepared. Defense counsel indicated his intention to present a theory of defense argument, based on the defendant’s reasonable expectation of mak
 
 *652
 
 ing deposits to cover the checks, during closing arguments. The next morning, pri- or to closing arguments, defense counsel requested that the court charge the jury with the following proposed instruction:
 

 Although the government does not have to show permanent loss to the bank, it does have to show that the defendant acted with fraudulent intent. Such fraudulent intent does not exist where the defendant had a reasonable expectation that funds sufficient to cover a check written would be deposited by the time the check was presented to the pay- or for payment. Therefore, if you find that the defendant reasonably expected to deposit sufficient funds to cover her eheck(s) by the time they would be presented for payment, you may not find that she is guilty of the offense of check kiting, as charged.
 
 [3]
 

 The court denied the defendant’s requested instruction, and the jury found Appellant guilty as charged. The district court subsequently sentenced Appellant to three years’ probation, restitution of $3,088.00,
 
 [4]
 
 and a $50.00 special assessment.
 

 On appeal, Ms. Morales asserts that the district court’s refusal to give the requested “theory of defense” instruction was an abuse of the district court’s discretion.
 

 II. Discussion
 

 A district court’s refusal to give a requested instruction in its charge to the jury is reviewed under an abuse of discretion standard.
 
 United States v. West,
 
 898 F.2d 1493 (11th Cir.1990),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 685, 112 L.Ed.2d 676 (1991);
 
 United States v. Bailey,
 
 830 F.2d 156 (11th Cir.1987). The district court’s refusal to give the requested instruction is reversible error only if (1) the instruction is substantially correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant’s ability to present an effective defense.
 
 United States v. Moorman,
 
 944 F.2d 801 (11th Cir.1991)
 
 cert. denied Bowers v. United States,
 
 — U.S. -, 112 S.Ct. 1766, 118 L.Ed.2d 427 (1992);
 
 United States v. Camejo,
 
 929 F.2d 610 (11th Cir.),
 
 cert. denied Setien v. United States,
 
 — U.S. -, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991). Thus, if the requested instruction is not substantially correct, the district court does not abuse its discretion by failing to charge the jury with the erroneous instruction.
 
 See United States v. Corona,
 
 849 F.2d 562 (11th Cir.1988),
 
 cert. denied,
 
 489 U.S. 1084, 109 S.Ct. 1542, 103 L.Ed.2d 846 (1989) (district court properly denied defendant’s requested charges where requested instructions had no legal foundation and were adequately covered by charges actually given). A requested “theory of defense” instruction is not substantially correct unless it has both legal support and some basis in the evidence.
 
 United States v. Hedges,
 
 912 F.2d 1397, 1405 (11th Cir.1990). For the reasons set forth below, Appellant’s requested instruction was an incorrect statement of the law, and, therefore, we affirm the judgment of the district court.
 

 To establish the offense of misapplication of bank funds pursuant to 18 U.S.C. § 656, the Government must prove the following four elements: (1) that the accused was an officer, director, agent or employee of a bank; (2) that the bank was in some way connected with a national or federally insured bank; (3) that the accused willfully misapplied the monies or funds of the bank; and (4) that the accused acted with intent to injure or defraud the bank.
 
 United States v. Farrell,
 
 609 F.2d
 
 *653
 
 816, 818 (5th Cir.1980).
 
 [5]
 
 The “intent to injure or defraud the bank” element is established by proof that the defendant knowingly participated in a deceptive or fraudulent transaction.
 
 United States v. Blanco,
 
 920 F.2d 844, 845 (11th Cir.1991);
 
 United States v. Adamson,
 
 700 F.2d 953, 965 (11th Cir.) (en banc),
 
 cert. denied,
 
 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).
 

 The essence of Appellant’s argument is that the requested instruction properly clarified the intent element of the misapplication charge for the jury. Relying principally on
 
 United States v. Foshee,
 
 569 F.2d 401 (5th Cir.),
 
 modified,
 
 578 F.2d 629 (5th Cir.1978),
 
 and appeal after remand,
 
 606 F.2d 111 (1979),
 
 cert. denied,
 
 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980), Appellant contends that when the alleged criminal conduct is in the nature of check kiting, the requisite fraudulent intent for misapplication of bank funds can be negated by showing that the defendant had a reasonable expectation of making deposits to cover the checks by the time the checks were presented for payment to the payor bank. Appellant claims that the criminal conduct in this ease was in the nature of check kiting
 
 [6]
 
 even though charged as misapplication of bank funds, and, accordingly, Appellant argues the district court erred by refusing to charge the jury that a reasonable expectation of making covering deposits is a valid defense in this case.
 

 In
 
 Foshee,
 
 the court considered a similar argument of lack of intent to defraud in a cheek kiting case charged under 18 U.S.C. § 1341.
 
 [7]
 
 The Foshees maintained several commercial bank accounts in connection with their operation of a 2,200 acre farm, a farm supply company, a milling company, and various other agricultural enterprises. They were indicted for making a series of deposits and withdrawals knowing that there were not sufficient funds in the drawee banks to cover the checks. The Foshees claimed they lacked intent to defraud because they did not know that the checks and deposits they were making were invalid. Essentially, the defendants argued that they had a reasonable expectation that their deposits would cover the checks they wrote at the time of presentment to the payor bank. Recognizing the validity of this defense, the court noted that “the general rule is that fraudulent intent is negated by proof one had a reasonable expectation that deposits would cover the check at the time it was presented for payment.”
 
 Foshee,
 
 569 F.2d at 403 n. 2;
 
 See also Foshee,
 
 578 F.2d at 633 (under the test of reasonable expectation of deposits sufficient to pay the checks when presented, the Foshees, conceivably, could have never paid the checks, yet have been acquitted if the jury believed they had a reasonable expectation of payment when the checks were written). Appellant asserts that the reasonable expectation defense should be allowed to negate intent to defraud in this check kiting case charged under § 656.
 

 In
 
 United States v. Southers,
 
 583 F.2d 1302 (5th Cir.1978), the court refused to allow a similar defense in a misapplication of bank funds case. There, the defendant, a bank officer, issued and signed, as authorized officer, six of his bank’s cashier’s
 
 *654
 
 checks without authorization. He was convicted of willful misapplication of bank funds for these unauthorized cashier’s checks. On appeal, the defendant argued that the jury should have been charged that evidence of his subsequent repayment of these checks could negate a finding of intent to defraud the bank. Rejecting this argument, the court held that “evidence of the eventual repayment of the misapplied funds does not negate the requisite intent,” and explained that “ ‘[t]he offense occurred and was complete when the misapplication took place.’ ”
 
 Southers,
 
 583 F.2d at 1305 (quoting
 
 United States v. Tidwell,
 
 559 F.2d 262, 266 (5th Cir.1977),
 
 cert. denied,
 
 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978) (citation omitted)). The court further stated:
 

 The situation regarding the relevancy of repayment in the case at hand is to be distinguished from that found in the recent case of
 
 United States v. Foshee
 
 (citation omitted). The Court in
 
 Foshee
 
 indicated that the payment of checks in a check kiting case is a factor the jury can weigh to determine whether- the defendant had a reasonable expectation that deposits would cover the checks at the time they would be presented for payment. The crucial question in a check kiting case is whether the defendant intended to write checks which he could not reasonably expect to cover and thereby defraud the bank or whether he was genuinely involved in the process of depositing funds and then making withdrawals against them. Hence, proof that the checks were eventually paid might well be pertinent to the defendant’s initial intent. That situation is much different from the one in the present case where the defendant was charged with willful misapplication of bank funds and issuance of bills of exchange with intent to defraud.
 
 Southers did not argue that he did not intentionally obtain the bank’s money in an unauthorized manner, thereby injuring the bank by substituting an alleged promise of questionable value for the bank's cash.
 
 His intent could not have been determined by whether the funds illegally obtained were returned or not returned. The holding of
 
 Foshee
 
 is limited to cases involving schemes of the nature of check kiting and cannot rationally be extended to the situation where the initial manipulation of the bank’s funds was unauthorized. In a check kiting situation the injury to the bank may not be clear at the time the checks are written.
 
 In a case where an officer misapplies the bank’s funds, however, the injury to the bank occurs at the time the funds are manipulated without authorization because the bank, being then in a less secure position than before, has been harmed.
 

 (emphasis added)
 
 Southers,
 
 583 F.2d at 1308 n. 8.
 

 Another case which considers the question of whether evidence of repayment can negate intent to defraud a bank is
 
 United States v. Scott,
 
 701 F.2d 1340 (11th Cir.),
 
 reh’g denied,
 
 707 F.2d 523,
 
 and cert. denied,
 
 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983). In
 
 Scott,
 
 the defendant was convicted of mail fraud under 18 U.S.C. § 1341 for falsifying information on credit and loan applications at various banks. The trial court allowed limited testimony that the accounts were current, but excluded defendant’s proffered evidence of repayment of the accounts. On appeal, the defendant argued that the repayment evidence demonstrated lack of intent to defraud the banks. The 'court distinguished the intent issue in
 
 Foshee,
 
 saying these facts were “unlike the facts in
 
 Foshee
 
 where the critical question was whether the Foshees intentionally deposited and withdrew money
 
 knowing
 
 there were insufficient funds.”
 
 Scott,
 
 701 F.2d at 1347. By contrast, the intent question in
 
 Scott
 
 “was whether [the defendant]
 
 knowingly
 
 falsified the information on the credit applications.”
 
 Id.
 
 The court held that the defendant’s intentional falsification on the documents established the requisite intent of the statute. After remarking that the defendant’s alleged repayment of the accounts was immaterial to whether he intentionally falsified the documents, the court stated “[t]his is similar to the intent ques
 
 *655
 
 tion in embezzlement cases. If a person in lawful possession of another’s property converts it, but all the while had the intent to replace it with substitute property, he or she is still guilty of embezzlement.”
 
 Scott,
 
 701 F.2d at 1347.
 

 The crucial characteristic of the case at bar which makes it similar to
 
 Scott
 
 and
 
 Southers
 
 and different from
 
 Foshee
 
 is the appellant’s intent to engage in fraudulent acts. In order to convict a defendant for willfully misapplying funds, the government must prove that the defendant
 
 knowingly
 
 participated in a deceptive or fraudulent transaction.
 
 Adamson,
 
 700 F.2d at 965. Thus, the relevant inquiry for intent to defraud in a § 656 misapplication case is whether the accused knowingly committed the act which harmed the bank. In
 
 Southers,
 
 the defendant’s intent was established by proof that he knowingly obtained unauthorized cashier’s checks. Proof of restitution did not negate this intent to injure the bank because the misapplication was complete when the defendant knowingly participated in a fraudulent transaction designed to give him unauthorized access to bank funds.
 
 Southers,
 
 583 F.2d at 1308 n. 8;
 
 accord United States v. McKinney,
 
 822 F.2d 946, 949 (10th.Cir.1987) (a charge under 18 U.S.C. § 656 is complete when the misapplication takes place, and the fact that the bank does not suffer a loss, or, if the bank does suffer a loss and the defendant later offers repayment, does not negate an earlier intent to defraud).
 

 Similarly, when the defendant in
 
 Scott
 
 intentionally provided false information to acquire loan accounts, he knowingly engaged in a fraudulent transaction. Knowledge of the falsity of this information established Scott’s intent to defraud the bank, and evidence of subsequent repayment could not negate this intent. Even though Scott may have intended to repay the bank, the fraud was complete when he obtained credit from the bank on false information.
 

 Conversely, in
 
 Foshee
 
 the defendants argued that they did not
 
 know
 
 that their checks were written on insufficient funds; therefore, a viable question remained as to whether they knowingly participated in a fraudulent transaction. In an alleged check kiting case such as
 
 Foshee,
 
 the injury to the bank may not be clear at the time the checks are written because the defendant may have been “genuinely involved in the process of depositing funds and then making withdrawals against them.”
 
 Southers,
 
 583 F.2d at 1308 n. 8. The intent to defraud element was at issue in
 
 Foshee
 
 where the crime was not complete upon the writing of the checks because the defendants may not have known the checks were bad. Instead of intentionally engaging in check kiting, the defendants may have been unintentionally writing bad checks.
 

 Unlike the Foshees, the appellant in the instant case, like the defendants in
 
 Scott
 
 and
 
 Southers,
 
 knew she was committing acts which would harm the bank. Appellant intended to receive cash for checks knowingly written on insufficient funds; thereby substituting a hope of future funds for cash. When Appellant obtained cash on checks she knew were bad, she acted with intent to defraud Southeast bank because she knowingly participated in a fraudulent transaction. The misapplication of bank funds was complete when the checks were cashed. The wrong occurred when an act was committed which placed the bank in a less secure position than before, such as the substitution of a promise of questionable value for cash.
 

 A reasonable expectation of making covering deposits after the event is not a defense which negates intent to defraud in a check kiting case. Rather, the reasonable expectation “defense” is really a means of showing the absence of a crime by demonstrating the lack of any intent to engage in an act known to be harmful to the bank. A reasonable expectation of making covering deposits does not negate an actual, earlier intent to defraud, which existed at the time the checks were cashed. The evidence shows that Appellant intended to obtain cash for bad checks, and this unlawful intent is not eliminated by showing that Appellant intended to make the checks good later.
 

 
 *656
 
 The district court did not commit error by excluding Appellant’s requested “reasonable expectation” instruction because that instruction is an incorrect statement of law. The judgment of the district court is therefore
 

 AFFIRMED.
 

 [1]
 

 . On defense counsel’s objection and with the government’s consent, the Court struck all references to the term “embezzlement” in the indictment and evidence because the parties agreed that Ms. Morales’ conduct could not be considered embezzlement.
 

 [2]
 

 . Relevant portions of 18 U.S.C. § 656 state: Whoever, being an ... employee of, ... any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, ..., embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, ..., shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both____
 

 18 U.S.C. § 656 (1988).
 

 [3]
 

 . The proposed instruction refers to the crime alleged as "check-kiting" whereas the indictment lists misapplication of bank funds. At trial, the prosecution presented evidence of a series of 49 checks systematically written and cashed by Appellant between September 15, 1989 and October 4, 1989, alleging that Appellant carried on a larger check kiting scheme of which the four checks were only the tail end. However, the jury was faced only with the charge of misapplication of bank funds for the four checks written on October 4th, as charged in the indictment.
 

 [4]
 

 . Appellant agreed to apply her last paycheck from Southeast Bank to her $3,511.00 debt from the bad checks, thereby reducing the amount owed to $3,088.00.
 

 [5]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206 (11th Cir.1981) (en banc), the United States Court of Appeals for the Eleventh Circuit held that the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, shall be binding as precedent on all federal courts within the Eleventh Circuit.
 

 [6]
 

 . Check kiting is the practice of writing a check against a bank account where funds are insufficient to cover it and hoping that before it is presented for payment to the payor bank, covering deposits (real or feigned) will have been made. In effect, to kite a check is to use a bad check to temporarily obtain credit.
 
 Black’s Law Dictionary
 
 238 (6th ed. 1990).
 

 [7]
 

 . Section 1341 is generally known as the mail fraud statute. This statute makes it a federal crime to devise or intend to devise "any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises” which involves the use of the mails. 18 U.S.C. § 1341 (1988). Because there is no federal crime of "check kiting” per se, this crime is usually prosecuted in federal court as mail fraud. When the alleged perpetrator of the kite is a bank officer or employee, a § 656 misapplication of bank funds charge can also be brought' in federal court.