**UNITED STATES of America, Appellee,**

v.

**Edward E. DOCKRAY, Defendant, Appellant.**

**No. 90–2224.**

United States Court of Appeals, First Circuit.

Heard July 19, 1991.

Decided Sept. 5, 1991.

---

Eugene V. Mollicone, Cranston, R.I., with whom William A. Dimitri, Jr., and Dimitri & Dimitri, Providence, R.I., were on brief, for defendant, appellant.

Seymour Posner, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Margaret E. Curran, Asst. U.S. Atty., Providence, R.I., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, and BOWNES and HILL *, Senior Circuit Judges.

TORRUELLA, Circuit Judge.

A type of electronic bulletin board known as a white board formed the centerpiece of a money-making scheme embarked upon by appellant Edward E. Dockray and his co-venturer Raymond Pollard. Doing business as Independent Leasing Corporation ("ILC"), Dockray and Pollard worked with brokers to market their program in Massachusetts, Rhode Island, Connecticut, New Hampshire, California and Utah. Investors were told that for each $5,000 block invested, ILC would purchase one white board in the investor's name. ILC would then lease the board from the investor, and would rent out the board to the ultimate user—a hotel or convention center, for example.

ILC promised its investors that, after a three month delay during which ILC would buy and place the white board, they would

---

* Of the Eleventh Circuit, sitting by designation.

receive $200 monthly payments for 48 months as a return on each $5,000 block. At the end of 48 months, ILC would buy back the investor's remaining interest in the board for $400. In this manner each investor would receive a total return of $10,000 on a $5,000 investment, over four years.

ILC also told its investors that it would arrange for a guaranty of their return on investment. The agreement between ILC and the guarantor company, negotiated by Dockray, required ILC to pay a premium for each white board investment sold and to furnish the guarantor with the name and address of each investor, and the serial number and location of each investor's white board.

It appears that ILC sold 287 white board investments to 114 investors, for a total of over $1,421,000. The company purchased a mere five white boards. Only 105 of the 287 investments were insured, and neither the serial numbers nor the locations of any white boards were furnished to the guarantor.

The ILC white board investors did not receive their promised rewards, but ILC's promoters did quite well. Dockray and Pollard diverted over $378,132 of the investors' money to Dockray for Dockray's benefit. In addition to receiving some cash outright, Dockray also used the diverted funds to purchase real estate ($89,950), pay personal brokerage debts ($62,040), buy an automobile, and make loans to friends.

On the basis of this evidence, the government secured an indictment charging Dockray and Pollard with one count of conspiracy to commit mail and wire fraud, 18 U.S.C. § 371, twelve counts of mail fraud, 18 U.S.C. § 1341, and twelve counts of wire fraud, 18 U.S.C. § 1343. Pollard pled guilty; as part of his plea bargain he agreed to testify against Dockray. Dockray stood trial and was ultimately convicted of 21 of the 25 counts. He now asks this court to review three asserted errors in the proceedings.

## Good Faith Instruction

Dockray's defense theory was that at all times during his involvement with ILC he acted in good faith, without any intent to defraud. He introduced evidence relevant to this defense and asked the court to give a specific good faith instruction.[1] The judge refused to give the requested charge; he stated that it sufficed to instruct the jury that the government must prove each element of the crime, including intent to defraud, beyond a reasonable doubt. The instruction delivered by the court contained a thorough explanation of intent to defraud, but did not use the words "good faith."[2]

▮ In so ruling the court followed the law in this circuit. Jury instructions are to be evaluated in the context of the charge as a whole, and a defendant has no absolute right to the use of particular language. *United States v. Nivica*, 887 F.2d 1110, 1124 (1st Cir.1989), *cert. denied,* ——

---

**1.** Dockray asked the court to give the following instruction:

> Good faith is an absolute defense to the charges in this case.
> If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime. The burden of establishing lack of good faith and criminal intent rests upon the prosecution. A defendant is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.

**2.** The charge included these provisions:

> The words "scheme" or "artifice," as used in the statute just read, include any plan or course of action intended to deceive others, and to obtain by false or fraudulent pretenses, representations or promises, money or other property, from the persons so deceived.
> A statement or representation is false or fraudulent, within the meaning of this statute, if known to be untrue, or made with reckless indifference as to the truth or falsity, and made or caused to be made with the intent to deceive.
> To act with intent to defraud means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.
> An act is done knowingly if done voluntarily and intentionally and not because of mistake, or accident, or other innocent reason.

U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). Although good faith is an absolute defense to a charge of mail or wire fraud, the court need only convey the substance of the theory to the jury. *New England Enterprises, Inc. v. United States*, 400 F.2d 58, 71 (1st Cir.1968), *cert. denied*, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969). "There is nothing so important about the words 'good faith' that their underlying meaning cannot otherwise be conveyed." *Id.* Thus, where the court properly instructs the jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required.

■ Appellant acknowledges the *New England Enterprises* precedent, a concession which would foreclose his appeal but for his request that we follow instead a short line of cases emanating from the Eighth and Tenth Circuits. Those courts have held "that, where the charge makes no mention of good faith, a standard instruction on specific intent is insufficient to submit the substance of the defense to the jury." *Nivica*, 887 F.2d at 1124. *See United States v. Casperson*, 773 F.2d 216 (8th Cir.1985); *United States v. Hopkins*, 744 F.2d 716 (10th Cir.1984) (*en banc*). The Supreme Court has recognized the conflict among the courts of appeals, but has not resolved it. *See Green v. United States*, 474 U.S. 925, 925, 106 S.Ct. 259, 260, 88 L.Ed.2d 266 (1985) (White, J., dissenting from the denial of certiorari).

We decline appellant's invitation to depart from our own case law for several reasons. To begin with, we recently considered and rejected the same request. *See Nivica*, 887 F.2d at 1124–25. Thus, the First Circuit position is not the antique that appellant would have us believe, but a doctrine of some vitality. Moreover, the reasons outlined in *Nivica* remain persuasive. It is still true that jury instructions are to be evaluated as a whole. *Id.* at 1125. Our rule on the good faith instruction is still the majority position. *Id.* Indeed, several recent cases adopting it can be added to those listed in *Nivica*, *id.* *See United States v. McElroy*, 910 F.2d 1016, 1026 (2d Cir.1990); *United States v. Dorotich*, 900 F.2d 192, 193–94 (9th Cir.1990); *United States v. Rochester*, 898 F.2d 971, 978–79 (5th Cir.1990). If there is a discernible trend on this issue, it seems to be moving against appellant. The Fifth Circuit formerly required a specific good faith instruction whenever warranted by the facts, but more recent cases have rejected this per se rule. *See United States v. Hunt*, 794 F.2d 1095, 1098 (5th Cir.1986) (abrogating *United States v. Fowler*, 735 F.2d 823 (5th Cir.1984), and *United States v. Goss*, 650 F.2d 1336 (5th Cir.1981)).[3] Finally, absent *en banc* consideration we are bound by our own precedent. *Nivica*, 887 F.2d at 1125. For all these reasons, we adhere to the law as it stands in this circuit.

It is true that appellant's case is distinguishable from *Nivica* in that the *Nivica* jury charge contained the precise words "good faith," absent from the charge delivered below. But that distinction does not call for a different result. As noted in *Nivica*, specific mention of "good faith" is not mandated. *See* 887 F.2d at 1124 n. 11. It is integral only that "the essence of the defense" be communicated to the jury. *Id.* And we think that the jury charge here accomplished that goal.

As a final note, appellant asserted at oral argument that he should prevail based on *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Considering the alleged significance of the case, which was decided in January 1991, we find

---

**3.** In fact, in rejecting its per se rule, the Fifth Circuit seems to have embraced a totality approach much broader than the rule applied here. Whereas we evaluate the jury instructions "in the context of the *charge* as a whole," *Nivica*, 887 F.2d at 1125 (emphasis added), the Fifth Circuit determines whether, "[t]aken together, the *trial, charge and closing argument* laid [defendant's] theory squarely before the jury." *United States v. Gray*, 751 F.2d 733, 736 (5th Cir.1985) (emphasis added). This approach focuses on the defendant's opportunity to "make his case" during the whole of the trial. *United States v. Kimmel*, 777 F.2d 290, 293 (5th Cir. 1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). If we were to apply this test to appellant's case, there is no doubt that his counsel put the issue of good faith to the jury, in terms that equated it with lack of intent to defraud.

it odd that appellant's brief failed to reference it. *Cheek* construed the word "willfully" in the tax evasion statute, 26 U.S.C. §§ 7201, 7203, and concluded that a good faith misunderstanding of the tax law need not be objectively reasonable to serve as a complete defense. 111 S.Ct. at 611. We do not find *Cheek* controlling for two reasons. First, the willfullness requirement in tax evasion serves a function unique in criminal law: it makes ignorance of the law a defense. *Id.* at 609. Thus it is not synonymous with the intent to defraud requirement in the mail and wire fraud statutes. Second, the issue in *Cheek* was whether or not the good faith defense must be objectively reasonable. The issue here is not the components of a good faith defense, but whether the existence of such a defense had been adequately conveyed to the jury. *Cheek* did not touch this point.

### Improper Vouching

Raymond Pollard appeared as the government's chief witness. His plea agreement was introduced as evidence. The following colloquy occurred at the end of direct examination:

> Q: Mr. Pollard, are you telling the jury and this court the truth about these events and circumstances today?
>
> A: Absolutely.
>
> Q: As best you recall them?
>
> A: As best I can recall them, yes.
>
> Q: Did I or the government tell you how to testify or answer any of the questions put to you by me?
>
> A: Other than tell the absolute truth.

During closing argument the prosecutor commented on Pollard's testimony:

> Mr. Pollard testified before you and told you that he pled guilty to these charges on September 5 before Judge Lagueux, under an agreement that he would cooperate by testifying in this case, and the only thing he was asked to do by the Government, he told you, was to testify truthfully. And that cooperation, in other words, his testimony would be brought to the court's attention. That's already been done, ladies and gentlemen. By testifying here, Judge Lagueux has seen this man and has evaluated his testimony and his cooperation, and that will be considered by Judge Lagueux at the time of sentencing, and the government agreed that it would take that in consideration when it made a recommendation at the time of his sentence. That is his motivation relative to testifying, and you should take that into consideration in evaluating his testimony.

Appellant characterizes these remarks as prosecutorial vouching and contends that they constitute reversible error. We disagree. The closing argument falls squarely within permissible boundaries. It is not error to inform a jury of the contents of a plea agreement, nor is it improper for the government to call attention to a witness' motivation for testifying. *United States v. Sutherland*, 929 F.2d 765, 775–76 (1st Cir.1991); *United States v. Munson*, 819 F.2d 337, 344–45 (1st Cir.1987); *United States v. Martin*, 815 F.2d 818, 821–23 (1st Cir.), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987). This is true even on direct examination. *Munson*, 819 F.2d at 345. Although the potential for abuse in that situation may be greater, it is unreasonable to force the government " 'to appear as if it were hiding the agreement or its terms by being prevented from mentioning them until they are first brought out by the defense, at least assuming the defense does not waive the right to bring those matters out.' " *Id.* (quoting *United States v. Binker*, 795 F.2d 1218, 1225 (5th Cir. 1986), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987)). In any event, the prosecutor's comments here were mild compared to those held harmless in *Sutherland*, 929 F.2d at 775–76 ("he will be honest with you"), and *Martin*, 815 F.2d at 823 ("they told you the truth"). We hold that there was no error.

Appellant also asserts that the court erred in overruling on the ground of untimeliness his objection to the prosecutor's closing argument. Because we have concluded that the closing argument did not constitute improper vouching, we need not reach this issue as any error was harmless.

### Verdict Against the Weight of the Evidence

Appellant finally contends that prejudice flowing from the combined force of the errors asserted above caused the jury to find him guilty in the face of ample evidence to the contrary. He also asserts that his conviction did not meet the reasonable doubt standard of proof. We reject both contentions.

Granted, some evidence in the record supports appellant's good faith defense. Several witnesses testified that they often overheard appellant arguing with Pollard about the management of ILC. Appellant executed notes payable to ILC for funds he transferred to his own account (although these notes were never repaid). Appellant, testifying in his own defense, asserted that he lacked knowledge of any wrongdoing and in fact attempted to save ILC when Pollard's perfidy came to light. And Pollard himself may not have been an entirely credible witness.

The existence of evidence favoring appellant, however, does not render the verdict unsupportable. The test is whether, viewing the record in the light most favorable to the government, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Boldt*, 929 F.2d 35, 39 (1st Cir. 1991); *United States v. Filippi*, 918 F.2d 244, 249 (1st Cir.1990). The jury is entitled to assess credibility and to accept or reject a witness's testimony, in whole or in part. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir.1986). And here there was sufficient evidence from which the jury could have concluded that appellant, despite his protestations to the contrary, was culpable.

We also note that the trial judge upheld the verdict in denying appellant's motion for a new trial. Although appellant has not specifically appealed from that denial but rather styled his appeal in terms of the verdict being against the weight of the evidence, our review must certainly consider the fact that the trial judge has evaluated and ruled on the sufficiency of the evidence—including the credibility of the witnesses. *See United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980). We will reverse the denial of a motion for a new trial only if it constitutes an abuse of discretion. *United States v. Thornley*, 707 F.2d 622, 626 (1st Cir.1987). The judge announced his decision here in a reasoned ruling from the bench. It in no way reflects an abuse of discretion. It cannot be said that the verdict was a miscarriage of justice, or that the evidence preponderates heavily against the verdict, *id.*, or that the jury reached a seriously erroneous result. *Rothrock*, 806 F.2d at 322. Thus, under either the more vigorous standard applicable to review of the denial of a new trial, or under the sufficiency of the evidence standard, we reach the same conclusion: the verdict is supported by the evidence.

The conviction is *affirmed.*