**UNITED STATES of America**

v.

**Kinley W. HOWARD, Defendant.**

**No. CRIM. 02–0079(RBW).**

United States District Court, District of Columbia.

Feb. 5, 2003.

Harvey Joseph Volzer, Shaughnessy, Volzer & Gagner, Washington, DC, for Kinley W. Howard.

Judith L. Kozlowski, U.S. Attorney's Office, Washington, DC, for U.S.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on the defendant's motion for judgment of acquittal on two counts of the indictment and a new trial on the remaining counts of the indictment. After careful consideration of the parties' pleadings, the Court concludes, as conceded by the government, that judgments of acquittal must be entered on counts four and five of the indictment (the money laundering counts). However, despite the defendant's claims of prejudice regarding the other three counts of the indictment, the Court finds all of these claims to be without merit and therefore concludes that he is not entitled to a new trial on counts one, two, and three of the indictment.

### I. Summary of Facts: [1]

The defendant in this matter, Dr. Kinley W. Howard, was accused of fraudulently acquiring control over the assets of the estate of his deceased aunt, Mildred Powell, by defrauding the Probate Division of

---

1. The facts that are the subject of the indictment in this matter were thoroughly discussed by the Court in its Memorandum Opinion dated August 28, 2002, in which it denied the defendant's motion to dismiss counts four and five of the indictment. Therefore, the Court will not reiterate in detail the facts that precipitated the trial of this matter.

the Superior Court of the District of Columbia to get himself appointed as a co-personal representative of his aunt's estate. In a five count indictment, Dr. Howard was charged with two counts of mail fraud (counts one and two), 18 U.S.C. § 1341 (2000); one count of wire fraud (count three), 18 U.S.C. § 1343 (2000); and two counts of engaging in monetary transactions in property derived from unlawful activity ("money laundering") (counts four and five), 18 U.S.C. § 1957 (2000). The mail fraud counts were based upon letters the defendant wrote on February 26, 1997, and March 26, 1997, respectively, to Riggs Bank and Paine Webber, Inc., closing the accounts of Mildred Powell at these institutions. Indictment ¶ 30, at 7–8. The wire fraud count alleged that on or about January 15, 1997, the defendant sent a letter from his office in Florida to Crestar Bank in Washington D.C., requesting the wire transfer of some of Ms. Powell's funds to an account he had established at the Florida First Bank, which resulted in $61,572.02 being wired from Crestar to the Florida First Bank on January 23, 1997. *Id.* ¶ 4, at 9. On March 26, 1997, the defendant again sent a letter to Crestar requesting a further transfer of Ms. Powell's account assets. Thereafter, on or about April 9, 1997, the defendant caused a second wire transfer to be made in the amount of $12,859.98 from Crestar Bank to the Florida First Bank. *Id.* ¶ 6, at 9.

Count Four, although incorporating the first twenty-eight paragraphs of the indictment, specifically asserted that on or about April 9, 1997, the defendant engaged in money laundering by causing the wire transfer of the same funds ($12,859.98) that also constituted part of the predicate conduct for the wire fraud offense charged in count three of the indictment. *Id.* ¶ 2, at 10. Count Five, which again incorporates the first twenty-eight paragraphs of the indictment, specifically charged that on or about February 26, 1997, the defendant engaged in money laundering by causing the mail transfer of the same funds ($23,903.43) that also constituted the predicate conduct for count one of the indictment, wherein the defendant is charged with mail fraud. *Id.* ¶ 2, at 10–11.

The parties appeared before the Court on August 20, 2002, for the commencement of the trial. However, before jury selection began, for the first time the defendant challenged, orally, the sufficiency of the money laundering counts based upon the theory that there was no illegal activity from which funds were acquired by the defendant and then laundered as alleged in the money laundering counts of the indictment, separate from the conduct the government also claimed constituted either mail or wire fraud as charged in counts one and three of the indictment, respectively. Prior to the Court's formal ruling on the defendant's challenge, the defendant filed a written motion to dismiss counts four and five, alleging that he could not be lawfully convicted of money laundering in violation of 18 U.S.C. § 1957 "where there is no proof of an independent criminal transaction separate from the underlying offense[,]" and that the indictment was flawed in this regard. In a Memorandum Opinion dated August 28, 2002, the Court denied the defendant's motion to dismiss. Although agreeing that a conviction for money laundering could not be based upon the same events that constituted either the mail or wire fraud charges, the Court concluded that dismissal was not required because the government had "alleged unlawful activity [other than the conduct charged in the mail and wire fraud counts] that preceded the activity that constituted the defendant's money laundering." *United States v. Kinley W. Howard*, No. 02–0079, slip op. at 21 (D.D.C. Aug. 28, 2002) (Walton, J.). The

Court also concluded that "even if details about this underlying unlawful conduct were not set forth in the indictment, this would not be grounds for dismissal of the indictment because whether the criminally derived proceeds 'existed before the laundering transaction is a question of proof, not a question of the adequacy of the indictment.'" *Id.* at 24 (quoting *United States v. Seward*, 272 F.3d 831, 837 (7th Cir.2001)). Thus, the Court denied the defendant's motion to dismiss counts four and five of the indictment with the caveat that the defendant could renew his motion at the close of the government's case-in-chief "based upon a challenge to the sufficiency of the evidence presented in support of the government's position that the laundered proceeds were derived from illegal activity." *Id.* at 24 n. 13.

On September 5, 2002, the jury found the defendant guilty of all five counts of the indictment. As to counts four and five, the jury had been instructed by the Court that if it found the defendant guilty of these counts, it "must indicate the specified criminal activity from which [it] concluded the money used in the money transaction alleged in [these] count[s] of the indictment [was] derived." Verdict Form at 2. Regarding count four, the jury concluded that the specified unlawful activity from which the laundered funds were obtained were part of the same funds that formed the basis for the wire fraud offense charged in count three of the indictment—the wire transfer of $12,859.98 from Crestar Bank to Florida First Bank on April 9, 1997. Similarly, the jury concluded that the specified unlawful activity in count five from which the laundered funds were acquired were the same funds that formed the basis for one of the mail fraud counts of the indictment (count one)—the mailing by Riggs Bank of a cashier's check in the amount of $23,903.43 on February 26, 1997. Thus, after receipt of the jury's verdict, the Court instructed counsel to file briefs addressing the legality of the defendant's money laundering convictions in light of the jury's findings regarding what constituted the specified criminal activity that formed the basis for the convictions of the money laundering charges.

On September 20, 2002, the defendant filed a Supplemental Memorandum in Support of Judgment of Acquittal ("Def.'s Mem."). In this pleading, the defendant argues that his convictions for money laundering can not survive because of the jury's inability to specify a predicate offense "which is separate from and prior in time to the alleged money laundering offense ..." Def.'s Mem. at 1. The defendant further argues that he was prejudiced as a result of the introduction of evidence regarding the money laundering charges and the denial by the Court of his request to introduce evidence that the government had denied him access to the property it had seized pending the resolution of a separate forfeiture proceeding the government had instituted, thus preventing him from making financial distributions to the estate's heirs. Finally, the defendant argues that the Court should have instructed the jury on the good faith and advice of counsel defenses. The government filed its Memorandum in Support of Dismissing the Two Money Laundering Counts ("Gov.'s Mem.") also on September 20, 2002, in which it agreed that based upon the jury's findings, the money laundering counts were not supported by specified unlawful activities separate from the acts that constituted the predicates for one of the mail and the wire fraud charges. The government, however, disagrees that the defendant suffered any prejudice regarding the mail and wire fraud charges. The Court will address each of the defendant's contentions below.

## II. *The Money Laundering Counts*

 In ruling on the defendant's motion for judgment of acquittal, the Court must "view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Treadwell,* 760 F.2d 327, 333 (D.C.Cir.1985) (citation omitted). The Court may only take the case away from the jury "when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted).

The jury found the defendant guilty of two separate counts of money laundering. The specified unlawful activity that the jury concluded was the source of the funds the defendant laundered were also the same funds that formed the basis for the commission of two of the other counts of the indictment (*i.e.,* one of the mail fraud counts and the wire fraud count). Although the Court denied the defendant's motion to dismiss the money laundering counts prior to the start of the trial, it warned the government at that time that it would have to prove at trial that the laundered funds were acquired independent from the funds that were the subject of the mail and wire fraud activity as charged in those counts of the indictment.

 The government concedes that "the specified unlawful activities [,as found by the jury,] are not distinct from the money-laundering transactions[, and therefore,] . . . the verdict as returned by this jury is inconsistent with the Court's ruling in [its] Memorandum Opinion [of August 28, 2002]." Gov.'s Mem. at 5. And, because the jury's findings did not identify specified unlawful activities from which funds were acquired by the defendant that are distinct from the alleged money laundering activities, the convictions on those two counts cannot stand. *See Seward,* 272 F.3d at 836 ("The transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction because the money laundering statutes criminalize 'transaction[s] in proceeds, not the transaction[s] that create [ ] the proceeds.'" (quoting *United States v. Mankarious,* 151 F.3d 694, 705 (7th Cir.1998))); *United States v. McGahee,* 257 F.3d 520, 528 (6th Cir.2001) (reversing defendant's money laundering conviction where the court found that "diverting the funds were part and parcel of the fraud and theft, and were not a separate act completed after the crime, as required under the money laundering statute.") (citations omitted); *United States v. Butler,* 211 F.3d 826, 830 (4th Cir.2000) (holding that to establish a money laundering offense "the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime."); *United States v. Christo,* 129 F.3d 578, 579–80 (11th Cir.1997) (holding that the allegations in support of the money laundering activity must include a "monetary transaction that [is] separate from and in addition to the underlying criminal activity" and reversing defendant's conviction for money laundering where "the withdrawal of funds charged as money laundering was one and the same as the underlying criminal activity of bank fraud and misapplication of bank funds."). Because the jury here did not identify specific unlawful activities from which laundered funds were acquired that were separate and distinct from the conduct charged as mail and wire fraud, the Court must vacate the defendant's two money laundering convictions and enter judgments of acquittal on those two counts of the indictment.

### III. Defendant's Motion for a New Trial on the Mail and Wire Fraud Counts

Defendant contends that he is entitled to a new trial on the remaining counts of the indictment on the grounds that he was prejudiced: (1.) by the confusion the jury allegedly had about whether it could acquit him of the mail and wire fraud charges if it convicted him of money laundering; (2.) by having evidence about the money laundering charges presented to the jury; (3.) by the government's introduction of evidence that the defendant failed to make financial distributions to the heirs of his aunt's estate; (4.) by the Court's denial of his request to introduce evidence that the government had seized the property the government is seeking to forfeit, which he contends prevented him from making distributions to the heirs of his aunt's estate; and (5.) by the Court's failure to instruct the jury on the good faith belief and advice of counsel defenses.

■ Pursuant to Federal Rule of Criminal Procedure 33, "the [C]ourt may grant a new trial to the defendant if the interests of justice so require." In order to grant a new trial,

> the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.... This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict.... The burden of proof that a new trial is justified rests with the party seeking the new trial.

*United States v. Edmonds,* 765 F.Supp. 1112, 1118 (D.D.C.1991) (citations omitted). Unlike a motion for judgment of acquittal, when ruling on a motion for a new trial "the Court need not accept the evidence in the light most favorable to the government, and [it] may weigh the testimony and may consider the credibility of the witnesses." *Id.* at 1118–19 (D.D.C.1991) (citations omitted). A motion for a new trial should only be granted "where the ... government's case had been marked by uncertainties and discrepancies." *Id.* (citation omitted). With this standard in mind, the Court will now address the defendant's contentions.

### A. Introduction of Evidence Concerning the Money Laundering Counts of the Indictment

First, the defendant argues that he sustained prejudice that entitles him to a new trial on the mail and wire fraud charges as a result of the government's introduction of evidence pertaining to the now dismissed money laundering counts. This allegation is without merit.

■ The evidence pertaining to the money laundering counts of the indictment would have been admissible regarding the mail and wire fraud counts even if the money laundering counts had not been charged in the indictment. This conclusion is really a no-brainer, since the identical conduct was alleged in the indictment as the predicates for one of the mail fraud charges and the wire fraud charge, as well as for the money laundering charges. And, even if that was not the case, all of the events concerning the money laundering activity were admissible to demonstrate the defendant's intent to defraud, *see, e.g.,* Fed.R.Evid. 404(b); *United States v. Cassell,* 292 F.3d 788, 795 (D.C.Cir.2002) (holding that evidence of other crimes, wrongs, or acts is admissible to demonstrate intent and holding that admission of defendant's prior gun possession was "relevant to show his knowledge of and intent to possess the firearms recovered from his bedroom[ ]"), which is an element the government had to establish for both the mail and wire fraud charges.

*United States v. Alston,* 609 F.2d 531, 536 (D.C.Cir.1979) ("Conviction for mail or wire fraud requires proof of only two elements: (1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme."). In any event, the evidence of the defendant's guilt was so compelling that even if the evidence pertaining to the money laundering offenses had not been introduced, the other admitted evidence of the mail and wire fraud violations was overwhelming, and therefore the defendant cannot demonstrate that he suffered any prejudice due to the admission of the challenged evidence. *See, e.g., United States v. Caballero,* 277 F.3d 1235, 1245–46 (10th Cir.2002) (holding that prosecutor's questions regarding defendant's conduct, which defendant argued was impermissible character evidence, did not amount to prosecutorial misconduct or prejudice the defendant "in light of the overwhelming evidence of guilt produced at trial . . ."); *United States v. Green,* 258 F.3d 683, 693–94 (7th Cir.2001) (holding that court's admission of evidence regarding other convictions that resulted from informant's testimony "was harmless because of the overwhelming evidence of Green's guilt. . . . [, noting that the informant's identification of the defendant] was confirmed not only [by another witness's] testimony, but by three . . . agents who testified that Green confessed to that incident—testimony that Green does not challenge on appeal."). In this case, there was ample evidence of the defendant's use of deception to get himself appointed as the co-representative of his aunt's estate, his mailings to banks closing the accounts of Mildred Powell; the wiring of the funds at his request from the closed accounts to bank accounts the defendant opened for the deposit of the funds; and his expenditure of these funds for his personal and business expenses. Thus, the Court cannot find that the defendant was prejudiced by the admission of the evidence pertaining to the money laundering charges.

## B. *Prejudice and Confusion of the Jury*

Next, the defendant argues that "[t]he jury forms are unmistakable evidence of prejudice." Def.'s Mem. at 8. In this regard, the defendant asserts that the jury's questions that were submitted to the Court while it was deliberating, regarding whether or not it needed to specify a particular transaction from which funds were acquired by the defendant and then laundered, to convict the defendant of money laundering, and the Court's reply that it did, caused the jury to believe "that in order to convict the defendant of money laundering, it could not acquit him of the mail fraud." Def.'s Mem. at 8.

During the jury's two days of deliberations, it asked the Court the following two questions: [2]

[1] If we find the defendant guilty of count four and the specified criminal activity was wire fraud, are we required in addition to specify on the verdict form from what bank to what bank the money was wired and the dates thereof?

[2] If we find the defendant guilty of count five and the specified criminal activity was mail fraud, are we required in addition to specify on the verdict form from what bank to what bank the money was mailed and the dates thereof.

After reading the questions to counsel and obtaining their input, the Court responded "Yes" to both questions. The defendant argues that the Court's response to the

---

**2.** Both questions were submitted by the jury to the Court on September 5, 2002. The time of the first question was 2:55 p.m. and the time of the second question was 2:56 p.m. The Court's recollection is that the questions were submitted to the Court at the same time.

second question "made it impossible for the jury to logically convict Dr. Howard on Count IV and acquit on Count II and similarly for Counts V and III." Def.'s Mem. at 10. He further contends that "Count I includes substantially the same allegations as Count II and therefore it would be impossible to acquit on Count I as well." *Id.* The Court does not find merit in either of the defendant's contentions.

First, the Court concludes that the jury was properly told to identify the specified unlawful activity from which funds were obtained by the defendant and then laundered if they concluded that the defendant was guilty of the money laundering charges. To convict the defendant of money laundering, "the government had to prove" that [the defendant] had "derived property from a specified unlawful activity and that he engaged in a monetary transaction involving that property." *Seward,* 272 F.3d at 836. However, as discussed above, the funds used to conduct the monetary transaction had to be derived from separate and distinct specified unlawful activity. *Id.* Therefore, it was proper to have the jury specify the unlawful activity from which the funds were obtained, to ensure that the money laundering transaction was distinct from the specified unlawful activity. *See, e.g., United States v. Taylor,* 239 F.3d 994, 999 (9th Cir.2001) (holding that defendant's challenge to district court's money laundering instructions on the basis that the directions "did not adequately specify that the money for the transactions had to come from specified unlawful activity[,]" was meritless. "The district court's instructions were ... ade-

quate because they did in fact explain that the money for the transactions in question had to be derived from specified unlawful activity ...").

Although the Fifth Circuit in *United States v. Loe,* 248 F.3d 449 (5th Cir.2001), rejected a claim that a unanimity instruction is required where a money laundering offense may have been committed with funds derived from several criminal acts that can constitute the specified criminal activity, the court did not say it was error to given such an instruction. Here, however, the unanimity instruction was essential. As already stated, the indictment in this case identified mail and wire fraud as the specified unlawful activities for the two money laundering charges, events that were also designated as the predicate conduct for one of the mail fraud charges and the wire fraud charge. Thus, the need for specificity was essential to ensure that if the jury convicted the defendant of either of the money laundering charges, that the verdict was based upon the defendant having laundered funds that he acquired from criminal activity that was separate and distinct from the laundering activity.[3]

The jury's first question, rather than reflecting confusion, was nothing more than a request for clarification about how it should complete the jury verdict form. And the second question, which related solely to count four, was merely a request for further clarification with greater specificity concerning what they needed to indicate on the verdict form as to count four. As such, the Court does not find that these questions are evidence of confusion on the jury's part. *See United States v. Fields,*

---

**3.** The money laundering offense charged in count five allegedly occurred on February 26, 1997. The indictment alleged and the government presented proof during the trial of the defendant's illegal acquisition of funds from his aunt's estate prior to that date. *See,* e.g., Indictment ¶¶ 15, 21, 22, and 28. The same is true for the money laundering offense charged in count four, which alleges that this offense was committed on April 9, 1997. *See, e.g.,* Indictment ¶¶ 15, 21, 22, and 28.

689 F.2d 122, 127 (7th Cir.1982) (rejecting defendant's contention that the jury's question regarding defendant's entrapment defense was evidence of the jury's confusion. "[T]he court finds that at best, the questions indicated a desire for a clarifying instruction, and not juror confusion. The jury's notes simply do not establish that the original instructions were 'so vague or ambiguous as to reasonably permit misinterpretation of the entrapment instruction.'") (quoting *United States v. Johnson*, 605 F.2d 1025, 1029 (7th Cir. 1979)).

Second, to guard against what the defendant is now arguing occurred, the Court, in its final instructions, advised the jury that:

> Each offense, and the evidence which applies to it, should be considered separately, and you should return separate verdicts as to each count. The fact that you may find the defendant guilty on any one count of the indictment shall not control or influence your verdict with respect to any other count or counts of the indictment.

This instruction provided guidance to the jury to prevent it from doing what the defendant alleges occurs—deciding that it had to convict the defendant of the mail and wire fraud charges if it convicted him of the money laundering offenses. As juries are presumed to adhere to the instructions given to them by the Court, *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *United States v. Burroughs*, 935 F.2d 292, 295 (D.C.Cir. 1991) (citation omitted), the Court does not find the defendant's claim that the jury believed that it could not acquit on one count if it convicted on another meritorious. Moreover, the logic of the defendant's position on this point is not readily apparent because the defendant fails to clearly articulate why his position has merit or offer any legal authority for it. These deficiencies, in the Court's view, flow from the argument's total lack of merit. Nothing in the jury's questions even remotely supports the defendant's theory, and the verdict form does not support it either. Rather, it is obvious that the jury was solely focusing on what findings it had to make in reaching verdicts on the money laundering counts. The manufacturing of the argument the defendant is advancing from what actually occurred is a desperate stretch of reality. *See, e.g., Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.*, 666 F.2d 1348, 1352 (10th Cir.1981) (in negligence case, court rejected plaintiff's contentions that the jury was confused, thus warranting a new trial, stating that "plaintiff would have us presume or surmise confusion in the minds of the jury at the time the verdicts were rendered, without any objective evidence thereof.... Under these circumstances, where plaintiff offered nothing in support of its motion except speculation, the trial court did not abuse his discretion in denying the motion for a new trial."). In any event, the logic of the entire argument is meritless and therefore is rejected.

■ The reality of what occurred as can best be logically gleaned from the record in this case is that the jury had already concluded the defendant's guilt on the mail and wire fraud charges at issue (counts one and three) by the time the money laundering charges were being considered. For one thing, the mail and wire fraud counts appeared on the verdict form before the money laundering counts and presumably the jury would have logically considered the defendant's guilt on those charges first. Even more concrete, however, and therefore less subject to supposition, is the wording of the jury's questions themselves. In both questions, the jury was not raising questions about the defendant's guilt of the mail and wire charges,

as the defendant seemingly suggests. Rather, the wording of the questions indicates that the jury had already concluded that the defendant was guilty of the mail and wire fraud charges and was merely requesting clarification about the degree of specificity it had to indicate on the verdict form as to what constituted the specified criminal activity if it also found the defendant guilty of the money laundering charges. Accordingly, the Court rejects the defendant's theory about how the jury's two questions should be construed.

### C. The Government's Introduction of Evidence that Defendant Failed to Make Financial Distributions to the Heirs of the Estate

The defendant contends that he was prejudiced because the "jury was invited by the government to use Dr. Howard's purported failure to comply with [a duty to make financial distributions to the heirs of his aunt's estate] as an element of, and proof of, the wire fraud and mail fraud counts of the indictment." Def.'s Mem. at 8. As legal grounds for his position, defendant relies on *United States v. Wolf*, 820 F.2d 1499 (9th Cir.1987) for the proposition that his convictions for mail and wire fraud should be vacated. Def.'s Mem. at 8.

In *Wolf*, the Ninth Circuit concluded that evidence and arguments presented by the government regarding the defendant's "possible violations of [a] civil banking regulation impermissibly tainted his trial on ..." criminal charges lodged against Wolf for misapplying bank funds and other related offenses. *Id.* at 1504. Specifically, the court condemned the government's use of expert testimony to "establish[ ] that Regulation O [,which required the majority of a board of directors to approve loans made to bank officers or executives,] imposed a duty on Wolf to inform the bank's directors that he had an interest in the loans for which [his fellow shareholders in a company that ultimately received the loan funds] ... were applying." *Id.* at 1505. The court concluded that Regulation O was improperly used by the government to "supply a crucial element of the misapplication and false entry charges." *Id.* This misuse of a purely civil regulation, the court held, "created a serious risk that the jury would find Wolf guilty of criminal [offenses] ... because he failed to comply with Regulation O." *Id.* Defendant contends that this Court violated the proscription of *Wolf* against the government being permitted to use a civil obligation as the basis for finding criminal liability by impermissibly permitting the government to introduce evidence and argue his criminal culpability for mail and wire fraud due to his failure to make distributions of the estate's assets to the heirs. *Wolf*, however, is distinguishable on this point.

To convict the defendant of mail and wire fraud, the government had to submit evidence to the jury that the defendant had the specific intent to defraud and utilized the mails or electronic means to accomplish the fraudulent objective. *See Alston*, 609 F.2d at 536. The defendant correctly notes that the Court permitted the government to introduce testimony that Dr. Howard never made any distributions of the estate's funds to the heirs. However, unlike *Wolf*, this evidence was not used by the government to establish an essential element of its case. This is because by the time this evidence was introduced, the government had already established that Dr. Howard caused the mailings of the funds from Ms. Powell's accounts to his own accounts, and had those funds transferred electronically to accounts he had established. It is also noteworthy that the defendant's initial petition to be appointed personal representative of Ms. Powell's estate was rejected because he was not "a direct blood rela-

tive of his aunt." Indictment ¶ 5, at 2. He thereafter successfully filed a second petition on December 30, 1996, with the Probate Division of the Superior Court of the District of Columbia, which resulted in his appointment as co-personal representative of the estate along with his mother, Lillian Powell Howard. *Id.* ¶ 8, at 2–3. The government established, through the defendant's own testimony, that he signed his mother's signature on the second petition, misrepresented his home address, and also falsely represented that his mother resided at a residence in Florida that belonged to defendant, although she actually resided in Tennessee. *See* Transcript of Proceedings dated August 29, 2002, at 129. Thus, the fact that Dr. Howard did not make a distribution to the heirs was just further evidence of the fact that he obtained the position as co-personal representative of the estate with the intent to defraud Mildred Powell's heirs and the Probate Court. The failure to make distributions therefore was not, as was the evidence and argument in *Wolf,* utilized by the government to establish an essential element of the mail and wire fraud charges.

■ This case is akin to *United States v. Stefan,* 784 F.2d 1093 (11th Cir.1986), *cert. denied,* 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 125 (1986), which the court in *Wolf* analyzed. In *Stefan,* the Eleventh Circuit, citing *United States v. Christo,* 614 F.2d 486 (5th Cir.1980), upon which *Wolf* relied, held that the introduction in a criminal trial of evidence about civil banking statutory violations allegedly committed by a defendant is not forbidden when the evidence is introduced for other legitimate purposes. *Stefan,* 784 F.2d at 1098. Therefore, the *Stefan* court upheld the district court's admission of evidence regarding the defendant's civil banking violations in his trial for misapplication of

bank funds and other charges because "evidence of [the] civil violations [was] introduced for purposes other than to show criminal misapplication and the evidence [was] not presented in such a way that the jury's attention [was] focused on the civil violations rather than the criminal ones ..." *Id.* at 1099. The *Stefan* court noted that the "district court made it clear that the jury did not have to infer criminal intent to misapply funds because of [the civil violations].... [In addition] the court instructed the jury that it could consider this evidence as it would any other evidence in determining whether the defendant had the required intent to misapply funds." *Id.* at 1100. In the present case, the evidence the government introduced was legitimately relevant as corroborative evidence on the question of whether the defendant acted with intent to defraud when, through fraudulent means, he put himself in the position to acquire control over the estate assets of Mildred Powell and then had the estate assets transferred to accounts he had opened. Therefore, the proscription of *Christo* and *Wolf* was not violated by the introduction of evidence about the defendant's failure to make distributions to the heirs of his aunt's estate.

**D.** *The Court's Refusal to Permit the Defendant to Introduce Evidence Regarding the Purported Reason He Could Not Make Distributions to the Heirs*

The defendant also argues that the Court erred in not permitting him to rebut the government's evidence that he did not make distributions to the heirs by showing that he was unable to do so because "the estate's funds were tied up by the government itself[ ]" in forfeiture proceedings. Def.'s Mem. at 7. In denying the defendant's request to introduce this evidence, the Court relied upon *United States v. Ross,* 206 F.3d 896, 899 (9th Cir.2000),

where the Ninth Circuit upheld a district court's grant of the government's motion *in limine* "to exclude any evidence of defendant's intent to pay back proceeds embezzled from the United States." *Id.* at 898 (internal quotation marks omitted). In concluding that "an intent to repay is not a defense to misappropriation of postal funds . . ." the Ninth Circuit noted that "to date, [the court] has refused to extend the repayment defense beyond the unique realm of check-kiting cases." *Id.* at 899. Defendant argues that *Ross* is distinguishable because in that case

> Ross's embezzlement was complete when she took the funds without recording the fact that she had issued them to herself . . . If Dr. Howard, on the other hand, had distributed the money in the Florida account to all of Mildred Powell's heirs on the day after it was received in Florida, then there would have been no criminal activity. That is, it was only the transfer without the subsequent intent to have a distribution that was unlawful.

Def.'s Mem. at 7.

Defendant's argument misses the mark completely. This is because it was not just his failure to distribute the estate's assets that established his intent to defraud. Rather, the evidence demonstrated that his intent to defraud occurred from the moment he signed his mother's signature and misrepresented her and his addresses to the Probate Division so that he would be appointed as the co-personal representative of his aunt's estate. He thereafter utilized the mails and wire facilities to have monies that were in various estate accounts, which he had obtained control over through fraud, sent to bank accounts he had established in Florida. Once the defendant fraudulently obtained control of the estate funds, had the funds transferred and deposited in accounts from which he

could make withdrawals, and then started to withdraw the funds for personal and business purposes, the necessary elements of both mail and wire fraud were totally satisfied. *See, e.g., Seward*, 272 F.3d at 835–36 (upholding defendant's conviction for mail fraud and money laundering where the indictment charged the defendant with a broad, fraudulent scheme that spanned almost two years and "covered both the efforts to withdraw money from [the decedent's] accounts and the effort to grab the entire estate by obtaining the probate court's acceptance of the forged will."). In other words, the wire and mail fraud offenses were "complete" when the transfer of the funds to the Florida account was accomplished and the intent to defraud was clearly demonstrated by the defendant's acts that were committed thereafter.

This situation is similar to the one the court faced in *United States v. Scott*, 701 F.2d 1340, 1342 (11th Cir.1983). In *Scott*, the defendant had been convicted of making false statements to banks and using the mails in furtherance of his scheme to obtain money or property by means of false representations. *Id.* The conduct for which Scott was convicted involved the submission of false credit applications to banks and other lenders. During Scott's trial, "the court permitted the Government to introduce extrinsic evidence of credit applications containing false information submitted by the [defendant] to institutions other than those charged in the indictment[,]" *id.* at 1346, to establish defendant's criminal intent. The defendant sought to rebut this evidence and demonstrate his lack of intent with evidence that for each account he opened, he had made payments to the account and the accounts were not delinquent. *Id.* The trial court excluded evidence of the payments, although it permitted limited testimony regarding the fact that the accounts

were current. In upholding the trial court's exclusion of the repayment evidence, the Eleventh Circuit held that the matter of repayment was irrelevant to whether the defendant

> *knowingly falsified* the information on the credit applications. [Defendant] openly admits he falsified this information. It was his intentional falsification on the documents which established the requisite intent of the statute. *Whether the accounts were current, or whether he repaid the accounts is immaterial as to whether he intentionally falsified the documents.*

*Id.* at 1347 (emphasis in original and emphasis added).

■ In this case, the defendant's desire to sell the property he had acquired with his aunt's estate funds so he could make distributions to her heirs would have demonstrated nothing more than a last minute, desperate attempt to extract his hand from a cookie jar whose treasures he had already totally depleted and consumed before his fraudulent scheme had been detected. It was therefore irrelevant to the issue of whether the defendant intended to defraud the probate court and the heirs of

the estate for defendant's personal benefit. *See id.* at 1348 ("If, however, evidence of repayment cannot shed light on the defendant's intent to do the forbidden act ... then evidence of repayment is irrelevant and it will only mislead and confuse a jury."). Accordingly, the Court again concludes that it was improper for the defendant to present evidence to the jury of his after detection offer to make amends for his use of the estate funds as a defense to the mail and wire fraud charges.[4]

### E. *The Court's Failure to Instruct the Jury on the Defenses of Good Faith and Action on Advice of Counsel*

Finally, the defendant argues that the "Court's failure to include the defendant's proposed jury instructions NN and OO (the good faith defense-explained; and action on advice of counsel-explained) deprived the defendant of the [right to have the jury instructed by] the Court [ ] ... on these defenses as opposed to [merely] hearing defense counsel's argument[s], especially when the jury had been instructed that what defense counsel said was not

---

4. The defendant also argues that the evidence relied upon by the government here to establish that he "knowingly used the proceeds of unlawful activity in a separate transaction[,]" to establish the money laundering charges, Def.'s Mem. at 6–7,—the opening of the estate accounts in Florida, the wiring of the estate assets into those accounts and the failure to pay the heirs from the estate accounts—was "not sufficient to show [his] guilty knowledge that [the estate] proceeds had been previously obtained illegally." *Id.* Because these acts were not *"per se* criminal violations[,]" *id.* at 7, the defendant attempts to distinguish that part of the *Wolf* opinion that condoned the district court's refusal to admit evidence about the ability of borrowers to repay bank loans Wolf arranged based upon misrepresentations he made about who the borrowers were and the purpose of the loans. *Wolf,* 820 F.2d at 1503. When considered in a vacuum,

the position seems to have merit: However, the defendant conveniently neglects to mention how he gained control over the funds at issue—that is, by fraudulently forging his mother's signature, making false representations to the Probate Division of the Superior Court, and ignoring an order of Superior Court Judge Cheryl M. Long that suspended his fiduciary duties regarding his aunt's estate, events that occurred before he sought to sell the property so that he could pay the heirs. With these facts added to the mix, the defendant's attempt to distinguish *Wolf* rings hollow. In any event, the Court has granted the defendant's motion to set aside the money laundering convictions, and therefore his claim about the relevance of the evidence concerning his inability to sell the property he acquired with the estate funds so he could pay the heirs as a defense against the money laundering charges is now moot.

evidence." Def.'s Mem. at 10. Both arguments are rejected by the Court.[5]

### (1) Good Faith Instruction

■■■ "Good faith is a complete defense to mail [and wire] fraud." *South Atlantic Ltd. Partnership v. Riese*, 284 F.3d 518, 531 (4th Cir.2002); *United States v. Dockray*, 943 F.2d 152 (1st Cir.1991); *United States v. Hopkins*, 716 F.2d 739, 749 (10th Cir.1982). Although the Court did not specifically instruct the jury on the "good faith defense[,]" it did specifically instruct the jury regarding the elements of the mail and wire fraud offenses and included a separate instruction that defined "intent to defraud." That instruction read:

> To act with an 'intent to defraud' means to act knowingly and with the intention or purpose to deceive or to cheat. An intent to defraud is accompanied by a desire to bring about some gain or benefit to oneself, or some other person, or by a desire or a purpose to cause some loss to some person.

As this instruction accurately recited the level of intent the government had to prove to establish the mail and wire fraud charges, a separate instruction regarding the "good faith defense" was unnecessary. *United States v. Storm*, 36 F.3d 1289, 1294–95 (5th Cir.1994) (holding that trial court did not abuse its discretion in refusing to submit the good faith defense instruction "because the defense of good faith was substantially covered by the charge given to the jury. The instructions on the terms 'knowingly' and 'willfully' follow those approved in this circuit."); *Dockray*, 943 F.2d at 155 (holding that defendant was not entitled to requested instruction on good faith defense where the court properly instructed the jury on the element of intent to defraud. "Although good faith is an absolute defense to a charge of mail or wire fraud, the court need only convey the substance of the theory to the jury.... Thus, where the court properly instructs the jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required.") (citations omitted); *United States v. McGuire*, 744 F.2d 1197, 1201–02 (6th Cir. 1984) (holding that trial court did not commit reversible error by failing to give defendants' good faith instruction. "The instructions with regard to specific intent adequately informed the jury of the defendants' theory of the case, and properly placed the burden of proof of intent on the government."); *Hopkins*, 716 F.2d at 751–52 ("holding that district court's instruction to jury on definition of acting with the intent to defraud but which did not specifically instruct jury on good faith defense did not warrant reversal of defendant's conviction because the jury was given the necessary legal concepts and ... the charge adequately advised the jury about defendant's theory of defense."). *But see United States v. Casperson*, 773 F.2d 216, 222 (8th Cir.1985) (holding trial court's refusal to give good faith instruction was reversible error where "on reviewing the

---

5. The Court notes that its practice is to require counsel to submit support for any instruction that he seeks to have presented to the jury. As counsel in this matter did not submit such support to the Court, the Court must conclude that no argument regarding these instructions were specifically made in Court. And therefore, the Court is doubtful that counsel's challenge at this point is sufficient. *See United States v. Cheek*, 3 F.3d 1057, 1061 (7th Cir.1993) ("[A] defendant must object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objections.... Merely submitting alternative instructions is not sufficient.") (internal quotation marks and citations omitted). Nevertheless, the Court will address the merits of the defendant's challenge to the Court's failure to submit the instructions to the jury.

charge as a whole, [the court of appeals could not] agree that the instructions directed the jury's attention to the defense of good faith with sufficient specificity to avoid error.... The evidence of guilt was not overwhelming ...[and in these] circumstances we cannot say that the trial court's failure to draw the jury's attention to the appellants' theory of defense was harmless beyond a reasonable doubt."); *United States v. Goss,* 650 F.2d 1336, 1345 (5th Cir.1981) (holding trial court committed reversible error in failing to instruct the jury on the good faith defense. "Charging the jury that a finding of specific intent to defraud is required for conviction, while it may generally constitute the negative instruction, *i.e.,* that, if the defendants acted in good faith, they could not have had the specific intent to defraud required for conviction, does not direct the jury's attention to the defense of good faith with sufficient specificity to avoid reversible error.").[6] Thus, assuming *arguendo* that the defendant was entitled to the good faith defense instruction, *see United States v. Sherer,* 653 F.2d 334, 337 (8th Cir.1981), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981) (good faith instruction is only required where defendant introduces evidence sufficient to warrant it), the Court's instruction on what the government had to prove to establish the defendant's intent to defraud

adequately "convey[ed] the substance of the [good faith] theory to the jury." *Dockray,* 943 F.2d at 155.

(2) *Advice of Counsel Instruction*

 The defendant also claims that the Court erred in failing to give an advice of counsel instruction to the jury. "A defendant is entitled to an advice-of-counsel instruction if he introduces evidence showing (1) he made full disclosure of all material facts to his attorney before receiving the advice at issue; and (2) he relied in good faith on the counsel's advice that his course of conduct was legal." *United States v. DeFries,* 129 F.3d 1293, 1308 (D.C.Cir.1997) (citation omitted). The Court "is required to give this instruction if there is any foundation in the evidence sufficient to bring the issue into the case, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility." *Id.* (citations and internal quotation marks omitted).

 "A defendant in a criminal case is entitled to adequate jury instructions on his theory of defense, provided that there is evidence to reasonably support such a theory." *Hopkins,* 716 F.2d at 749. A review of the defendant's testimony in this case reveals that he was not entitled to an advice of counsel instruction. Although the defendant testified that he consulted attorneys regarding several issues concerning his aunt's estate,[7] at no time did he testify

---

6. Subsequent cases from the Fifth Circuit have abrogated the holding of *Goss. See, e.g., United States v. Rochester,* 898 F.2d 971, 978 (5th Cir.1990) (*"Goss,* however, must be read in light of later cases which indicate that the failure to instruct on good faith is not fatal when the jury is given a detailed instruction on specific intent and the defendant has the opportunity to argue good faith to the jury.") (citation omitted); *United States v. Rubio,* 834 F.2d 442, 447 (5th Cir.1987) (noting that *Goss* ' "per se approach has been rejected by later cases, which have held that it is necessary to look beyond the four corners of the charge to determine if a defendant's ability to

present a defense has been impaired."); *United States v. Hunt,* 794 F.2d 1095, 1098 (5th Cir.1986) (holding that the defendant was not entitled to a specific good faith instruction where the trial court "gave a detailed instruction on the prerequisite of specific intent" and noting that the defendant's reliance on *Goss* and similar cases was "unavailing ... because later caselaw has effectively by-passed these decisions.").

7. For example, the defendant testified that he consulted an attorney regarding saving bonds he recovered in the names of two other individuals who were designated as the payees,

that he informed his attorneys that he signed his mother's signature on the petition he submitted to the probate court to be appointed as a personal representative of the estate or that he misrepresented his mother's and his addresses on the petition, facts that were material to whether the defendant properly acquired legal control of the estate. *See United States v. Condon*, 132 F.3d 653, 656–57 (11th Cir.1998) (affirming district court's denial of defendant's request for an advice of counsel jury instruction because he failed to inform his attorney that he had never made the requisite down payment for the small business loan he secured which "went to the heart of the misrepresentations [defendant] made to the [Small Business Administration].")*; United States v. Lindo*, 18 F.3d 353, 357 (6th Cir.1994) (affirming district court's denial of defendant's request for a good faith reliance on counsel instruction where, "[a]t best, Lindo ha[d] shown only that he ha[d] in the past relied on [his counsel's] advice concerning stock sales. No evidence establishe[d], however, that Lindo provided all of the pertinent facts regarding the stock sales at issue ... to [his counsel] before [his counsel], according to Lindo, directed the issuance of the opinion letters that serve[d] as the basis for Lindo's advice of counsel theory."); *United States v. Cheek*, 3 F.3d 1057, 1062 (7th Cir.1993) (affirming district court's denial of defendant's request for a jury instruction on advice of counsel defense in tax evasion case where "[n]owhere [did] Mr. Cheek contend either that he made a full and accurate report as to his tax status to any attorney or that he 'acted strictly in accordance with the advice of his attorney.'") (citations omitted).[8] Because the

and was told that the bonds "belonged to the estate and not to the individuals whose name[s] w[ere] on the bonds[ ]" because they were in his deceased aunt's possession. Transcript of Proceedings dated August 29, 2002, at 96. Similarly, the defendant testified that he was advised by one of his attorneys that he could be given gifts by his aunt, *id.* at 99; that he had the right to be reimbursed from the estate's funds for any bills he incurred as a representative of the estate, *id.* at 101; and that he did not have to attend a hearing when his removal as a personal representative of the estate would be addressed. *Id.* at 110. Noteworthy also, is the fact that the defendant testified that he did not remember making any "specific inquiries" of his attorney regarding what are the legal consequences when a person dies without a will. *Id.* at 120.

8. The *Cheek* court also noted that because the trial court's instruction regarding the tax offenses, which were specific intent crimes, informed the jury that it had to find that the defendant acted knowingly and willfully, the jury was "fairly and accurately" instructed on the defendant's advice of counsel defense. 3 F.3d at 1063. In other words, the *Cheek* court concluded that the instructions provided to the jury on "willfulness encompassed the defendant's theory of good faith reliance on counsel's advice, thus obviating the need for an additional instruction." *Id.*

The same is true here. This is because the jury was told that one of the elements of the mail and wire fraud offenses is that the defendant acted with "the intent to defraud." The jury was also instructed that "intent to defraud" means to act "knowingly and with the intention or purpose to deceive or cheat. An intent to defraud is accompanied by a desire to bring about some gain or benefit to oneself ... or by a desire or a purpose to cause some loss to some person." Thus, had the jury accepted the defendant's explanation about why he did or did not do certain acts based upon advice he allegedly received from his attorneys, it could have concluded from the Court's instructions that proof of the element of intent to defraud, which was necessary to convict the defendant of both mail and wire fraud, was lacking. This is essentially what the jury would have been told had the "[a]ction on the [a]dvice of [c]ounsel" instruction been submitted to the jury. *See* 1A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 19.08 (5th ed.2000), which was the instruction requested by the defendant. Thus, the defendant received the functional equivalent of the advise of counsel instruction, even though he was not legally entitled to it.

defendant here did not provide testimony that would support an advice of counsel instruction, he was not entitled to such an instruction.

## IV. *Conclusion*

For all of the reasons set forth above, the defendant's motion for judgment of acquittal on the money laundering charges is granted and the motion for a new trial on the remaining counts of the indictment is denied.

An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Defendant's Supplemental Memorandum for Judgment of Acquittal is granted in part, and denied in part. It is further

**ORDERED** that judgments of acquittal shall be entered on counts four and five of the indictment. It is further

**ORDERED** that defendant's request for a new trial of the remaining counts of the indictment is denied.