**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 30 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

INDEPENDENT TECHNOLOGIES, LLC,
DBA Anova,

              Plaintiff-Appellee,

    v.

OTODATA WIRELESS NETWORK, INC.;
et al.,

              Defendants-Appellants.

No.   20-15756

D.C. No.
3:20-cv-00072-RCJ-CLB

MEMORANDUM*

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted September 15, 2020
San Francisco, California

Before:  SCHROEDER, W. FLETCHER, and VANDYKE, Circuit Judges.

        This is an appeal from the grant of a preliminary injunction.  We have

jurisdiction under 28 U.S.C. § 1292.  We "will reverse a preliminary injunction only

where the district court 'abused its discretion or based its decision on an erroneous

legal standard or on clearly erroneous findings of fact.'"  *MAI Sys. Corp. v. Peak*

---

        *        This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

*Comput., Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) (citation omitted). "[W]e 'determine de novo whether the trial court identified the correct legal rule'" and whether the rule's application to the facts "was … without support in inferences that may be drawn from the facts in the record." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citation omitted). The parties dispute whether the district court's "use" and "solicitation" preliminary injunctions were warranted and "narrowly tailored." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).[1] To warrant a preliminary injunction, Anova must show a likelihood of success on the merits against Otodata, a likelihood of irreparable harm, that the balance of hardships tips in Anova's favor, and that it would be in the public's interest to issue the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I. "Use" Prohibition

### A. Success on the Merits & Irreparable Harm

For Anova to succeed on its claims for misappropriation of trade secrets under the federal Defense of Trade Secrets Act (DTSA) and the Nevada Uniform Trade Secrets Act (NUTSA), it must show Defendants used or disclosed its trade secrets in contravention of a "duty not to disclose." *Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 23 (Nev. 2001) (citation omitted). Anova provided sufficient evidence

---

[1] Because the parties are familiar with the facts, we discuss them only as necessary to resolve the issues presented in this appeal.

2

demonstrating Defendants Steven and Brian Rechenmacher[2] used and disclosed Anova's trade secrets to its competitor Otodata in contravention of their confidentiality agreements. Steven sent emails disclosing Anova trade secret information to Otodata and encouraged Otodata to use it. Anova produced emails showing that after this disclosure the information was likely used in marketing pitches to win customers away from Anova to Otodata.[3] The district court did not abuse its discretion in finding Defendants have a high likelihood of success on the merits of its claims.

"Where a party can show a strong chance of success on the merits, he need only show a possibility of irreparable harm." *MAI Sys. Corp.*, 991 F.2d at 517 (citation and alterations omitted). Because Anova provided evidence casting doubt on Defendants' protestations that everything was deleted, the district court did not abuse its discretion in concluding there was at least a "possibility of irreparable harm" to justify the "use" prohibition in the preliminary injunction. *Id.*[4]

---

[2] Brian claimed he did not communicate with Otodata prior to leaving Anova. Although Brian may not have spoken directly to Otodata, emails sent during that time period demonstrate Steven acted as Brian's emissary and the injunction thus reasonably includes Brian.

[3] Although the emails demonstrating this use constitute hearsay, "[a] district court may … consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

[4] We do not need to reach the merits of the spoliation discovery sanction to find that the facts demonstrate Anova is at risk of irreparable harm in the disclosure and use of its trade secrets by a competitor.

### B. Balance of Equities & Public Interest

The balance of equities tips sharply in Anova's favor under the "use" prohibition: if Defendants still retain paper or digital copies of Anova trade secrets, the "use" prohibition protects Anova from its trade secrets being used against it and retains its ability to compete. A "use" prohibition is warranted under the balance of equities. But Defendants reasonably argue that the prohibition against use of "proprietary" information could practically include Anova "advertising material and its website"—which is arguably "proprietary," but not a trade secret. The "use" injunction should thus be narrowly tailored to specify that it prohibits the use of Anova's "nonpublic" proprietary information to enable Otodata to continue legitimately competing with Anova using publicly available information. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020).

## II. Solicitation Prohibition

### A. Balance of Equities & Public Interest

The "solicitation" prohibition differs from the "use" prohibition under the balance of the equities. Despite the district court's initial stated desire that the solicitation restriction would not "cover[] existing clients of Otodata," the prohibition's resulting customer list both includes current Otodata customers, and customers the Rechenmachers aver they never serviced, tipping the balance of equities sharply in favor of the Defendants. The district court acknowledged that

"Defendants' solicitation of th[o]se clients would not, in and of itself, infringe on [Anova's] protected trade secret rights; however, solicitation of th[o]se clients utilizing [Anova's] trade secrets would."

As ordered, the "solicitation" prohibition is overinclusive as to companies that are not implicated in Defendants' actions and acts as an anticompetitive punishment.[5]  The injunction against solicitation should be narrowed to enjoin the use of any trade secret information in the solicitation of existing Anova customers.

## CONCLUSION

The "use" prohibition, once amended to specify that it applies to only "nonpublic" proprietary information, validly ensures that any Anova trade secrets still in Defendants' possession may not be used on penalty of further sanctions from the district court.  But the overbroad "solicitation" prohibition as currently written restricts Otodata's legitimate business activity.  Accordingly, the district court on remand is directed to narrow the "solicitation" prohibition consistent with the above discussion.

**REMANDED** with instructions to amend the preliminary injunctions consistent with this disposition.

---

[5]Anova points to *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, arguing that the "solicitation" provision merely "eliminate[s] any unfair head start the defendant[s] may have gained."  941 F.2d 970, 974 (9th Cir. 1991).  But the injunction in *Lamb-Weston* was narrowly tailored to prevent McCain Foods from selling a product worldwide that it was already prohibited from lawfully selling, placing McCain Foods in precisely the place it would have been absent its theft of Lamb-Weston's trade secrets.  *Id.* at 973–74.  *Lamb-Weston* does not apply here, where the district court admits the "solicitation" provision "includes … preexisting customers," such that it *prevents* Otodata from being in the same competitive position it was prior to hiring the Rechenmachers.